# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| JUSTIN SHERWOOD *et al.*, | Lead Case No.: 1:22-cv-01495-ELR |
| Plaintiffs, | |
| v. | |
| HORIZON ACTUARIAL SERVICES, LLC, | |
| Defendant. | |

## DEFENDANT HORIZON ACTUARIAL SERVICES, LLC'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Horizon Actuarial Services, LLC ("Horizon"), respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs' Consolidated Class Action Complaint ("CCAC"), ECF No. 21, because this Court lacks subject matter jurisdiction. Plaintiffs fail to allege any injury in fact fairly traceable to the ransom event underlying these Actions and, therefore, lack standing under Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343–44 (11th Cir. 2021).

Horizon further moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the CCAC for failure to state a claim. Plaintiffs have not alleged

facts that, if true, give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs improperly rely on conclusory, boilerplate allegations and speculation to try to state their claims against Horizon for the unforeseeable criminal act of a third party. Such formulaic pleading cannot and does not state a plausible claim against Horizon.

WHEREFORE, Horizon respectfully requests that this Court enter an Order granting its Motion and dismissing Plaintiffs' Consolidated Class Action Complaint with prejudice.[1]

Dated: September 12, 2022

COZEN O'CONNOR

By:    */s/ Alycen A. Moss*
Alycen A. Moss
Georgia Bar No. 002598
1230 Peachtree St., NE
The Promenade, Suite 400
Atlanta, Georgia 30309
Telephone: (404) 572-2052
Fax: (877) 728-1396
Email: amoss@cozen.com

---

[1]    The matter of *Doe I v. Horizon Actuarial Services, LLC*, No. 22-2358, consolidated with these Actions on August 19, 2022, ECF No. 26, should also be dismissed with prejudice on the same grounds.

John J. Sullivan (*pro hac vice*)
**COZEN O'CONNOR**
3 WTC, 175 Greenwich St., 55th Fl.
New York, NY 10007
Telephone: (212) 453-3729
Fax: (646) 461-2073
Email: jsullivan@cozen.com

Max E. Kaplan (*pro hac vice*)
**COZEN O'CONNOR**
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-4672
Fax: (215) 701-2282
Email: mkaplan@cozen.com

*Attorneys for Defendant*
*Horizon Actuarial Services, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1.

*/s/ Alycen A. Moss*
Alycen A. Moss

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 12, 2022, I caused a true and correct copy of the foregoing document to be filed with the Court's CM/ECF system, which served notice on all counsel of record.

*/s/ Alycen A. Moss*
Alycen A. Moss

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JUSTIN SHERWOOD *et al.*,<br><br>        Plaintiffs,<br><br>  v.<br><br>HORIZON ACTUARIAL SERVICES, LLC,<br><br>        Defendant. | Lead Case No.: 1:22-cv-01495-ELR |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT HORIZON ACTUARIAL SERVICES, LLC'S MOTION TO
<u>DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Alycen A. Moss (GA Bar No. 002598)
**COZEN O'CONNOR**
1230 Peachtree St., NE, Suite 400
Atlanta, Georgia 30309
Telephone: (404) 572-2052
Fax: (877) 728-1396
Email: amoss@cozen.com

John J. Sullivan (*pro hac vice*)
**COZEN O'CONNOR**
3 WTC, 175 Greenwich St., 55th Fl.
New York, NY 10007
Telephone: (212) 453-3729
Fax: (646) 461-2073
Email: jsullivan@cozen.com

Max E. Kaplan (*pro hac vice*)
**COZEN O'CONNOR**
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-4672
Fax: (215) 701-2282
Email: mkaplan@cozen.com

*Attorneys for Defendant Horizon Actuarial Services, LLC*

# **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ....................................................................................1

BACKGROUND .....................................................................................5

I.      Horizon Actuarial Services, LLC ..............................................5

II.     Plaintiffs' Allegations About the Ransom Event .........................5

III.    Plaintiffs Allegations of Harm and Causes of Action ..................7

        A.      What Plaintiffs Allege About Their PII and Harm ............7

        B.      What Plaintiffs Do Not Allege About Their PII and Harm ...........9

        C.      Plaintiffs' Causes of Action and Requested Relief............10

ARGUMENT ........................................................................................11

I.      Plaintiffs Lack Article III Standing ...........................................11

        A.      Plaintiffs' Alleged Injuries Are Not Sufficiently Concrete ...............12

                i.      The Increased Risk of Harm Is Not Sufficiently Concrete.......12

                        (1)     The Risk of Future Harm Does Not Support Standing to Seek Damages............12

                        (2)     There Is No "Certainly Impending" Risk of Future Harm Necessary to Seek Injunctive Relief................14

                ii.     Standing Cannot Be Manufactured Through Self-Inflicted Mitigation Efforts....................17

                iii.    Diminution in Value of PII Is Not a Concrete Injury ..............18

                iv.     Lost Privacy Is Not a Concrete Injury .....................19

v.      Anxiety and Anger Are Not Injuries in Fact...........................19

vi.     Plaintiffs Allege No Lost Benefit of Any Bargain ..................20

vii.    Experiencing Indicia of Identify Theft Is Not a Sufficiently
        Concrete Injury to Support Standing ........................................20

B.      The Alleged Unauthorized Use of Plaintiffs' PII Is Not Fairly
        Traceable to the Ransom Event.............................................................21

i.      Bedont and Chavez Allege No Unauthorized Use of
        Their PII ...................................................................................22

ii.     "Spam" Is Not Traceable to the Ransom Event........................22

iii.    Credit Card Fraud Is Not Traceable to the Ransom Event .......23

iv.     No Alleged Dark Web Exposure Is Traceable to the Ransom
        Event .........................................................................................24

v.      The Allegedly Attempted Tax, Bank, and Credit Report Fraud
        Are Not Traceable to the Ransom Event ..................................24

II.     Each of Plaintiffs' Causes of Action Fails as a Matter of Law ....................26

A.      Plaintiffs Fail to Sufficiently Allege Their Common Law Claims .....27

i.      A Choice of Law Analysis Is Premature ..................................27

ii.     Plaintiffs' Negligence (Count I) and Negligence *Per Se*
        (Count II) Claims Fail...............................................................27

        (1)     No Common Law Duty to Safeguard PII Exists ...........27

        (2)     The FTC Act Does Not Create a *Per Se* Tort Duty........29

        (3)     Plaintiffs Fail to Allege a Causal Link ..........................31

        (4)     Plaintiffs Fail to Allege Any Cognizable Injuries..........35

(5) The Economic Loss Doctrine Bars Plaintiffs' Recovery ........................................................ 39

iii. Plaintiffs' Unjust Enrichment Claim Fails (Count III) ............ 40

iv. Plaintiffs' Invasion of Privacy Claim Also Fails (Count V) .... 42

B. Plaintiffs Fail to State Claims under the Various Consumer Protection or Trade Practice Laws Invoked ............................................................ 44

i. State Statutes Lack Extraterritorial Effect ................................ 45

ii. The California Plaintiffs' CCPA Claim Fails (Count VII) ....... 46

iii. California and Louisiana Plaintiffs Cannot Assert a Breach of Their States' Notification Statutes (Counts VIII, XII) ............ 49

iv. Plaintiffs Fail to State Consumer Fraud or Unfair Trade Practices Claims (Counts VI, IX–XI, XII–XIV) ...................... 51

(1) Plaintiffs Fail to Allege a Deceptive Trade Practice ...... 51

(2) Plaintiffs Fail to Allege an Unfair Trade Practice .......... 53

(3) Plaintiffs Fail to Allege an Unlawful Practice ................ 54

(4) Plaintiffs Fail to Allege Resultant Ascertainable Loss ... 55

C. Plaintiffs Allege No Plausible Basis for Declaratory or Injunctive Relief ............................................................................................................ 57

D. Plaintiffs' Claim for Attorneys' Fees Also Fails ................................ 60

III. The *Doe I* Action Must Also Be Dismissed ................................................ 60

CONCLUSION ........................................................................................................ 60

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Kindi v. Edwards Bros.*,
   No. 03-0459, 2005 WL 2265914 (D. Idaho Sept. 16, 2005) .............................36

*Allgood v. PaperlessPay Corp.*,
   No. 20-0516, 2022 WL 846070 (M.D. Fla. Mar. 22, 2022) ........................33, 34

*Almon v. Conduent Bus. Servs., LLC*,
   No. 19-0746, 2019 WL 13207564 (N.D. Ga. Aug. 9, 2019) ............................34

*Alves v. United States*,
   No. 19-0044, 2022 WL 2105976 (D. Idaho June 10, 2022) ..............................32

*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*,
   No. 19-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) .................................13

*Amburgy v. Express Scripts, Inc.*,
   671 F. Supp. 2d 1046 (E.D. Mo. 2009) ......................................................16, 38

*Aponte v. Ne. Radiology*,
   No. 21-5883, 2022 WL 1556043 (S.D.N.Y. May 16, 2022) ........................15, 16

*Archey v. Osmose Utils. Servs., Inc.*,
   No. 20-05247, 2021 WL 3367156 (N.D. Ill. Aug. 3, 2021) ........................55, 56

*Ark. Dev. Fin. Auth. v. Wiley*,
   611 S.W.3d 493 (Ark. 2020) .........................................................................27

*Ashby v. Mortimer*,
   No. 18-0143, 2020 WL 572718 (D. Idaho Feb. 5, 2020) .................................39

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................2, 12, 26, 29

*Attias v. CareFirst, Inc.*,
   518 F. Supp. 3d 43 (D.D.C. 2021).................................................................20

iv

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005)................................................................45

*Baba v. Hewlett-Packard Co.*,
  No. 09-5946, 2010 WL 2486353 (N.D. Cal. Jun. 16, 2010) ..............54

*Banks v. Sec'y, Dep't of Health & Hum. Servs.*,
  38 F.4th 86 (11th Cir. 2022) ..............................................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................47, 48, 52

*Bell v. Twp. of Maplewood*,
  No. 19-1298, 2021 WL 3260848 (D.N.J. July 30, 2021) ...................60

*Belle Chasse Auto. Care v. Advanced Auto Parts*,
  No. 08-1568, 2009 WL 799760 (E.D. La. Mar. 24, 2009)..............27, 36, 39, 50

*Beverly v. Reinert*,
  606 N.E.2d 621 (Ill. App. Ct. 1992) ...........................................43, 44

*Blackmon v. Tri-Arc Food Sys.*,
  782 S.E.2d 741 (N.C. App. Ct. 2016)................................................31

*Blackwell v. Hatley*,
  688 S.E.2d 742 (N.C. Ct. App. 2010).................................................35

*Blahous v. Sarrell Reg'l Dental Ctr.*,
  No. 19-0798, 2020 WL 4016246 (M.D. Ala. July 16, 2020) .............16

*Bostic Packaging v. City of Monroe*,
  562 S.E.2d 75 (N.C. Ct. App. 2002).................................................27

*Bower v. Harrah's Laughlin*,
  125 Nev. 470 (Nev. 2009) .................................................................31

*Bradix v. Advance Stores*,
  226 So. 3d 523 (La. Ct. App. 2017)............................................35, 44

*In re Brinker Data Incident Litig.*,
  No. 18-0686, 2019 WL 3502993 (M.D. Fla. Aug. 1, 2019)...............17

*In re Brinker Data Incident Litig.*,
    No. 18-0686, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ..........................29, 30

*Brit Ins. Holdings N.V. v. Krantz*,
    No. 11-948, 2012 WL 28342 (N.D. Ohio Jan. 5, 2012) ....................................35

*Bros. v. Hewlett-Packard Co.*,
    No. 06-2254, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) .............................54

*Brown v. Medtronic, Inc.*,
    628 F.3d 451 (8th Cir. 2010) ...............................................................................26

*Bryntesen v. Camp Auto., Inc.*,
    No. 13-0491, 2015 WL 3616970 (D. Idaho June 9, 2015)................................51

*Buchler v. Oregon*,
    853 P.2d 798 (Or. 1993) ................................................................................31, 32

*Buoy v. Soo Hee Kim*,
    221 P.3d 771 (Or. Ct. App. 2009)........................................................................30

*C.C. v. Med-Data*,
    No. 21-2301, 2022 WL 970862 (D. Kan. Mar. 31, 2022)...............13, 19, 20, 38

*Cel-Tech Commc'ns. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ........................................................................................53

*Celestine v. Capital One*,
    741 F. App'x 712 (11th Cir. 2018) ....................................................................10

*Chamber of Com. v. EPA*,
    642 F.3d 192 (D.C. Cir. 2011)............................................................................21

*In re Chi. Flood Litig.*,
    680 N.E.2d 265 (Ill. 1997)..................................................................................39

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..........................................................................12, 14, 17, 25

*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011)................................................................56

*Clark Cnty. Sch. Dist. v. Richardson Const*,
123 Nev. 382 (2007) ........................................................35

*Cmty. Bank of Trenton v. Schnuck Markets*,
887 F.3d 803 (7th Cir. 2018) ....................................28, 40

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
No. 15-1125, 2017 WL 1551330 (S.D. Ill. May 1, 2017) ..................................53

*In re Cmty. Health Sys*,
No. 15-0222, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016) ..........18, 21, 24, 38

*Collins v. Athens Orthopedic Clinic*,
849 S.E.2d 213 (Ga. Ct. App. 2020)........................................58, 59

*Cooney v. Chi. Pub. Sch.*,
943 N.E.2d 23 (Ill. App. Ct. 2010) .......................................27, 42, 43

*Cooper v. Bonobos, Inc.*,
No. 21-0854, 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022)....................16, 18, 23

*Corona v. Sony Pictures*,
No. 14-9600, 2015 WL 3916744 (C.D. Cal. June 15, 2015)............................36

*Cross v. Ciox Health, LLC*,
438 F. Supp. 3d 572 (E.D.N.C. 2020) ........................................54

*Crowder v. Delta Air Lines*,
963 F.3d 1197 (11th Cir. 2020) ...........................................6

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..........................................53

*Days Inns of Am. v. Matt*,
454 S.E.2d 507 (Ga. 1995) .............................................31

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009)...........................................50, 51

*Di Donato v. Wortman*,
358 S.E.2d 489 (N.C. 1987)..............................................35

*Doble v. Interstate Amusements, Inc.*,
    372 P.3d 362 (Idaho 2016) ...................................................................57

*Douglas v. Am. Fin. Res., Inc.*,
    No. 16-0353, 2017 WL 2951635 (D. Idaho Mar. 20, 2017) .............................52

*Dugas v. Starwood Hotels & Resorts Worldwide*,
    No. 16-0014, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .............29, 40, 56, 59

*In re Dunbar*,
    446 B.R. 306 (Bankr. E.D. Ark. 2011) ...............................................43

*Duqum v. Scottrade, Inc.*,
    No. 15-1537, 2016 WL 3683001 (E.D. Mo. July 12, 2016) .................16, 18, 19

*In re Exxon Valdez*,
    270 F.3d 1215 (9th Cir. 2001) ...........................................................32

*FCM v. Wash. Mut. Bank*,
    No. 07-1298, 2007 WL 4565237 (D. Or. Dec 21, 2007) ..................................43

*Feitler v. Animation Celection, Inc.*,
    13 P.3d 1044 (Or. Ct. App. 2000)......................................................55

*Fell v. Fat Smitty's*,
    467 P.3d 398 (Idaho 2020) ...............................................................32

*Fernandez v. Leidos, Inc.*,
    127 F. Supp. 3d 1078 (E.D. Cal. 2015) ................................21, 23, 25

*Fero v. Excellus Health Plan*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017)................................................18

*Fisher v. Comm'ns Workers of Am.*,
    No. 08-0018, 2008 WL 4754850 (N.C. Super. Ct. 2008) ................................44

*Fleshman v. Wells Fargo Bank, N.A.*,
    27 F. Supp. 3d 1127 (D. Or. 2014) ...............................................51, 53

*Flintkote Co. v. Dravo Corp.*,
    678 F.2d 942 (11th Cir. 1982) ...........................................................39

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) ..................................................40, 55, 59

*Franke v. Clinton William Holland Revocable Tr.*,
633 S.W.3d 772 (Ark. Ct. App. 2021) ...............................................................31

*Franklin v. CitiMortgage, Inc.*,
No. 11-608, 2012 WL 10192 (S.D. Ohio Jan. 3, 2012) .....................................40

*Galaria v. Nationwide Mut. Ins. Co.*,
No. 13-0118, 2017 WL 4987663 (S.D. Ohio Aug. 16, 2017) ...........................34

*Gardiner v. Walmart*,
No. 20-4618, 2021 WL 4992539 (N.D. Cal. July 28, 2021) .....................*passim*

*Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*,
279 Ga. 77 (2005) .............................................................................................39

*Gibson v. Credit Suisse AG*,
No. 10-0001, 2012 WL 529702 (D. Idaho Feb. 17, 2012) ................................41

*Gomez v. Bank of Am., N.A.*,
No. 11-1253, 2012 WL 929790 (D. Or. Mar. 19, 2012) ...................................55

*In re Google Android Consumer Privacy Litig.*,
No. 11-2264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ............................56

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..............................................................44

*Graham v. Universal Health Serv.*,
539 F. Supp. 3d 481 (E.D. Pa. 2021) .....................................................2, 15, 17

*Green-Hamilton v. DECA Health, Inc.*,
No. 17-2534, 2018 WL 3842169 (N.D. Ohio Aug. 13, 2018) ..........................42

*Greenstein v. Noblr Reciprocal Exch.*,
No. 21-4537, 2022 WL 472183 (N.D. Cal. Feb. 15, 2022).......................*passim*

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) .............................................36, 37, 38, 47

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ...........................................................9

*Hanover Ins. Co. v. Carroll*,
No. 13-1802, 2014 WL 5472520 (N.D. Ga. Mar. 5, 2014)................................39

*Harrington v. Syufy Enters.*,
931 P.2d 1378 ...................................................................27

*Hayden v. The Retail Equation*,
No. 20-1203, 2022 WL 2254461 (C.D. Cal. May 4, 2022).............................43

*Herndon v. Torres*,
249 F. Supp. 3d 878 (N.D. Ohio 2017) ...............................................31

*Hetman v. Schwade*,
317 S.W.3d 559 (Ark. 2009) .........................................................45

*Hill v. Clark*,
No. 11-0057, 2012 WL 787398 (N.D. Ga. Mar. 7, 2012)................................40

*Holly v. Alta Newport Hosp., Inc.*,
No. 19-7496, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020)............................36

*Holmes v. Countrywide Fin.*,
No. 08-0205, 2012 WL 2873892 (W.D. Ky. July 12, 2012)............................37

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019) ........................................................40

*Hunstein v. Preferred Collection & Mgmt. Servs.*,
No. 19-14434, -- F.4th --, 2022 WL 4102824 (11th Cir. Sept. 8,
2022) .......................................................................13, 43

*I.C. v. Zynga, Inc.*,
No. 20-1539, 2021 WL 3271187 (N.D. Cal. July 30, 2021) ...........................13

*Innovative Manpower Sols., LLC v. Ironman Staffing, LLC*,
929 F. Supp. 2d 597 (W.D. La. 2013) .............................................53

*Int'l Equip. Trading v. Illumina, Inc.*,
  312 F. Supp. 3d 725 (N.D. Ill. 2018)....................................................45

*In re iPhone Application Litig.*,
  No. 11-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011).......................55, 56

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012)....................................42

*Irwin v. Jimmy John's Franchise, LLC*,
  175 F. Supp. 3d 1064 (C.D. Ill. 2016) ......................................41, 42

*Jackson v. Loews Hotels, Inc.*,
  No. 18-0827, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ............................56

*Jane Doe No. 1 v. Uber Techs.*,
  79 Cal. App. 5th 410 (2022) ................................................31

*Jeffers v. Olexo*,
  539 N.E.2d 614 (Ohio 1989) .............................................27

*Johnson v. 3M*,
  563 F. Supp. 3d 1253 (N.D. Ga.).........................................39

*Kahle v. Litton Loan Servicing LP*,
  486 F. Supp. 2d 705 (S.D. Ohio 2007)..........................................36

*Kamdem-Ouaffo v. Idahoan Foods, LLC*,
  243 F. Supp. 3d 1130 (D. Idaho 2017) ...........................................41

*Khan v. Children's Nat'l Health Sys.*,
  188 F. Supp. 3d 524 (D. Md. 2016)................................................19

*Krawiec v. Manly*,
  811 S.E.2d 542 (N.C. 2018).................................................41

*Krottner v. Starbucks Corp.*,
  406 F. App'x 129 (9th Cir. 2010) ..............................................37

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ....................................................55

*La. Galloway v. State ex rel. Dep't of Transp. & Dev.*,
654 So. 2d 1345 (La. 1995) ...............................................................29

*Leasepartners Corp. v. Robert L. Brooks Trust*,
942 P.2d 182 (Nev. 1997)...................................................................40

*Legg v. Leaders Life Ins.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021)..................................13, 19, 20

*Leonard v. Walthall*,
143 F.3d 466 (8th Cir. 1998) ..............................................................39

*Loftis v. Credit Acceptance*,
No. 10-00496, 2011 WL 976621 (E.D. Ark. Mar. 18, 2011)............29

*Lord v. Customized Consulting Specialty*,
643 S.E.2d 28 (N.C. 2007)...................................................................39

*Low v. LinkedIn Corp.*,
No. 11-1468, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011).......16, 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).............................................................................11

*Maag v. U.S. Bank, Nat'l Ass'n*,
No. 21-0031, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ...............47

*Mann v. Producer's Chem. Co.*,
827 N.E.2d 883 (Ill. App. Ct. 2005) ..................................................32

*Mansfield v. United States*,
No. 18-0278, 2019 WL 6868965 (D. Idaho Dec. 16, 2019)..............35

*McConnell v. Dep't of Lab.*,
828 S.E.2d 352 (Ga. 2019) ....................................................42, 43, 44

*McCullough v. Scott*,
109 S.E. 789 (N.C. 1921).....................................................................46

*McGlenn v. Driveline Retail Merch.*.,
No. 18-2097, 2021 WL 4301476 (C.D. Ill. Sept. 21, 2021)..............28

*McMullen v. McHughes L. Firm*,
    454 S.W.3d 200 (Ark. 2015) ...................................................................42, 44

*Melancon v. La. Off. of Student Fin. Assistance*,
    567 F. Supp. 2d 873 (E.D. La. 2008)...................................................................36

*Mendonca v. Tidewater Inc.*,
    862 So. 2d 505 (La. Ct. App. 2003)...................................................................45

*Mengelson v. Ingalls Health Ventures*,
    751 N.E.2d 91 (Ill. Ct. App. 2001) ...................................................................32

*In re Michaels Stores Pin Pad Litig.*,
    830 F. Supp. 2d 518 (N.D. Ill. 2011)...................................................................40

*Mico Mobile Sales & Leasing v. Skyline*,
    546 P.2d 54 (Idaho 1975) ...................................................................31

*Moyer v. Michaels Stores*,
    No. 14-561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ...................................36

*MSP Recovery Claims, Series v. Metro. Gen. Ins.*,
    2022 WL 2800850 (11th Cir. July 18, 2022) .......................................................5

*Murray v. ILG Techs.*,
    798 F. App'x 486 (11th Cir. 2020)...................................................................28

*Musselman v. Blue Cross & Blue Shield of Ala.*,
    684 F. App'x 824 (11th Cir. 2017)...................................................................57

*N. Am. Chem. Co. v. Superior Court*,
    59 Cal. App. 4th 764 (1997) ...................................................................39

*Nation v. State, Dep't of Corr.*,
    158 P.3d 953 (Idaho 2007) ...................................................................27, 28

*O'Donnell v. Bank of Am., Nat. Ass'n*,
    504 F. App'x 566 (9th Cir. 2013)...................................................................54

*Oman v. Delta Air Lines, Inc.*,
    889 F.3d 1075 (9th Cir. 2018) ...................................................................45

*Or. Steel Mills. v. Coopers & Lybrand*,
   83 P.3d 322 (Or. 2004) ...............................................................27, 31

*Owens v. Perdue Foods*,
   No. 20-0307, 2021 WL 2323718 (M.D. Ga. June 7, 2021)................................30

*Paradise Ent. Grp.. v. Favors*,
   871 S.E.2d 916 (Ga. Ct. App. 2022).................................................................31

*Park v. Wells Fargo Bank*,
   No. 12-2065, 2012 WL 3309694 (N.D. Cal. Aug. 13, 2012)...........................55

*Parker v. Brush Wellman.*,
   377 F. Supp. 2d 1290 (N.D. Ga. 2005)......................................................35, 39

*Parker v. Parker*,
   520 S.W.3d 693 (Ark. Ct. App. 2017).................................................................55

*Parm v. Nat'l Bank of Cal., N.A.*,
   242 F. Supp. 3d 1321 (N.D. Ga. 2017)..............................................................41

*Patterson v. Med. Rev. Inst. of Am.*,
   No. 22-0413, 2022 WL 2267673 (N.D. Cal. June 23, 2022) ...........................38

*Patton v. Experian Data Corp.*,
   No. 17-1559, 2018 WL 6190349 (C.D. Cal. Jan. 23, 2018)...............................55

*Paul v. Providence Health Sys.-Or.*,
   273 P.3d 106 (Or. 2012) ....................................................................35, 39, 57

*Paz v. California*,
   22 Cal. 4th 550 (2000) .......................................................................................27

*PCI-U, LLC v. Fair Isaac Corp.*,
   No. 17-2650, 2019 WL 10837768 (N.D. Ga. Aug. 5, 2019) (Ross,
   J.)...............................................................................................................................59

*Perdue v. Hy-Vee*,
   455 F. Supp. 3d 749 (C.D. Ill. 2020) ..........................................................*passim*

*Peregrine Falcon LLC v. Piaggio Am., Inc.*,
    446 F. Supp. 3d 654 (D. Idaho 2020) .................................................40

*Phillips v. Consol. Supply Co.*,
    895 P.2d 574 (Idaho 1995) ...............................................................45

*Pica v. Delta Air Lines, Inc.*,
    No. 18-2876, 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018).....................29, 30

*Pinero v. Jackson Hewitt Tax Serv. Inc.*,
    594 F. Supp. 2d 710 (E.D. La. 2009)...............................................42, 50, 51, 52

*Pisciotta v. Old Nat'l Bancorp*,
    499 F.3d 629 (7th Cir. 2007) ............................................................36

*Posecai v. Wal-Mart Stores.*,
    752 So. 2d 762 (La. 1999) ................................................................31

*In re Practicefirst Data Breach Litig.*,
    No. 21-0790, 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022).........................*passim*

*Prescott v. Slide Fire Sols., LP*,
    410 F. Supp. 3d 1123 (D. Nev. 2019)..................................................53

*Provost v. Aptos, Inc.*,
    No. 17-2120, 2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) (Ross,
    J.)....................................................................................3, 23, 25, 38

*Provost v. Aptos*,
    No. 17-2120, 2018 WL 8263122 (N.D. Ga. Dec. 21, 2018) (Ross,
    J.)....................................................................................17, 18, 20

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ...................................................26, 36, 38, 39

*Quintero v. Metro Santurce, Inc.*,
    No. 20-1075, 2021 WL 5855752 (D.P.R. Dec. 9, 2021)............................15, 20

*Ramirez v. The Paradies Shops, LLC*,
    No. 21-3758 (N.D. Ga. July 27, 2022) (Ross, J.) ...........................4, 7

*Rasnick v. Krishna Hosp., Inc.*,
     713 S.E.2d 835 (Ga. 2011) ................................................................27

*Razuki v. Caliber Home Loans*,
     No. 17-1718, 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ...........38, 50, 54, 55

*Reilly v. Ceridian Corp.*,
     664 F.3d 38 (3d Cir. 2011) ..........................................................15, 19

*Resnick v. AvMed*,
     693 F.3d 1317 (11th Cir. 2012) .........................................................33

*Riggins v. City of St. Marys*,
     589 S.E.2d 691 (Ga. Ct. App. 2003)...............................................31, 32

*Rimini St., Inc. v. Oracle Int'l Corp.*,
     473 F. Supp. 3d 1158 (D. Nev. 2020).............................................45, 46

*Ruiz v. Horizon Actuarial Servs., LLC*,
     No. 22-2279 (N.D. Ga. Apr. 12, 2022).........................................7, 8, 11

*Ryckeley v. Callaway*,
     412 S.E.2d 826 (Ga. 1992) ..............................................................38

*S.F. Apartment Ass'n v. City & Cty. of S.F.*,
     881 F.3d 1169 (9th Cir. 2018) ..........................................................43

*Saelzler v. Advanced Grp. 400*,
     23 P.3d 1143 (Cal. 2001) .................................................................32

*Sampson v. Murray*,
     415 U.S. 61 (1974).........................................................................58

*Savidge v. Pharm-Save*,
     No. 17-0186, 2017 WL 5986972 (W.D. Ky. Dec. 1, 2017) ...............37

*In re Sci. Apps. Int'l (SAIC) Backup Tape Data Theft Litig.*,
     45 F. Supp. 3d 14 (D.D.C. 2014).............................................18, 21, 23

*Sevastopoulos v. KAS, Inc.*,
     No. 09-14338, 2010 WL 11596735 (S.D. Fla. Aug. 9, 2010).............6

xvi

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v.*
  *GlaxoSmithKline, PLC,*
  737 F. Supp. 2d 380 (E.D. Pa. 2010)...................................................................51

*Sheffler v. Americold Realty Tr.,*
  No. 21-1075, 2022 WL 1815505 (N.D. Ga. Jan. 19, 2022) ........................28, 30

*Shelter Corp. v. Btu, Inc.,*
  572 S.E.2d 200 (N.C. Ct. App. 2002)...................................................................40

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.,*
  No. 11-1197, 2012 WL 13028094 (C.D. Cal. Apr. 4, 2012).................................58

*Simpson v. Burrows,*
  90 F. Supp. 2d 1108 (D. Or. 2000).......................................................................42

*Smith Serv. Oil, Co. v. Parker,*
  549 S.E.2d 485 (Ga. Ct. App. 2001).....................................................................40

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020)................................................................................58

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
  903 F. Supp. 2d 942 (S.D. Cal. 2012)............................................................*passim*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
  996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014) ................................................40, 50

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016)........................................................................................11, 12

*Springmeyer v. Marriott Int'l,*
  No. 20-0867, 2021 WL 809894 (D. Md. Mar. 3, 2021)......................................21

*Stamat v. Grandizio Wilkins Little & Matthews,*
  No. 22-0747, 2022 WL 3919685 (D. Md. Aug. 31, 2022)............................18, 19

*State v. Daicel Chem. Indus., Ltd.,*
  106 P.3d 428 (Idaho 2005) ...................................................................................53

*Steinmetz v. Am. Honda Fin.*,
447 F. Supp. 3d 994 (D. Nev. 2020)...................................................................54

*Sullivan v. Oracle Corp.*,
254 P.3d 237 (Cal. 2011) ...................................................................................45

*In re SuperValu*,
No. 14-2586, 2016 WL 81792 (D. Minn. Jan. 7, 2016) .....................................19

*In re SuperValu*,
870 F.3d 763 (8th Cir. 2017) .............................................................................17

*In re SuperValu.*,
925 F.3d 955 (8th Cir. 2019) ..........................................................30, 37, 41, 59

*Sussman v. Fin. Guards, LLC*,
No. 15-2373, 2016 WL 9414345 (E.D. La. July 21, 2016)...............................51

*Swafford v. Huntsman Springs, Inc.*,
409 P.3d 789 .......................................................................................................53

*Swift & Co. v. Peterson*,
233 P.2d 216 (Or. 1951) .....................................................................................46

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014)................................................................55

*Taylor v. McNichols*,
243 P.3d 642 (Idaho 2010) .................................................................................57

*Taylor v. Opteum Fin. Servs., LLC*,
No. 18-3896, 2018 WL 6726056 (N.D. Ga. Oct. 25, 2018)..............................57

*Tennier v. Wells Fargo Bank, N.A.*,
666 F. App'x 689 (9th Cir. 2016).......................................................................51

*Thomas v. Sharon*,
427 S.W.3d 756 (Ark. Ct. App. 2013)................................................................32

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
861 F. Supp. 2d 898 (N.D. Ill. 2012).................................................................55

*Thunder Studios v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) .............................................................45

*Toretto v. Donnelley Fin. Sols.*,
   No. 20-2667, 2022 WL 348412 (S.D.N.Y. Feb. 4, 2022) .....................41, 46, 50

*Total Rebuild Inc. v. Streamline Hose & Fittings, Inc.*,
   No. 15-1172, 2015 WL 9237112 (W.D. La. Dec. 16, 2015)............................52

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)..............................................................*passim*

*Travis v. Assured Imaging LLC*,
   No. 20-0390, 2021 WL 1862446 (D. Ariz. May 10, 2021)...................16, 18, 19

*Trichell v. Midland Credit Mgmt.*,
   964 F.3d 990 (11th Cir. 2020) ..........................................................12

*Trickett v. Spann*,
   613 S.W.3d 773 (Ark. Ct. App. 2020)..............................................40, 42

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) ...................................................*passim*

*Tuttle v. Treasure Valley Marine, Inc.*,
   No. 15-0314, 2016 WL 3198230 (D. Idaho June 8, 2016)................................51

*Unchageri v. Carefirst of Md., Inc.*,
   No. 16-1068, 2016 WL 8255012 (C.D. Ill. Aug. 23, 2016) ............................23

*Van Kirk v. Bank of Am. Corp.*,
   No. 11-0621, 2012 WL 3544735 (D. Idaho Aug. 15, 2012) ............................57

*Vickers v. Interstate Dodge, Inc.*,
   882 So. 2d 1236 (La. Ct. App. 2004)..................................................55

*In re VTech Data Breach Litig.*,
   No. 15-10889, 2017 WL 2880102 (N.D. Ill. July 5, 2017) ............................19

*Wallis v. Ford Motor Co.*,
   208 S.W.3d 153 (Ark. 2005) .......................................................51, 56

*Welborn v. IRS*,
218 F. Supp. 3d 64 (D.D.C. 2016)..........................................................19, 21, 23

*Whalen v. Michaels Store*,
689 F. App'x 89 (2d Cir. 2017) ...........................................................20, 25, 37

*Williford v. Bayview Loan Servicing*,
No. 16-4268, 2017 WL 11151639 (N.D. Ga. July 14, 2017) ............................30

*Wilson v. Blue Ridge Electric Membership Corp.*,
578 S.E.2d 692 (N.C. Ct. App. 2003)................................................................51

*Wilson v. Gutierrez*,
323 P.3d 974 (Or. Ct. App. 2014).....................................................................40

*Wong v. Jing*,
189 Cal. App. 4th 1354 (2010) ..........................................................................39

*Worix v. MedAssets*,
857 F. Supp. 2d 699 (N.D. Ill. 2012)...........................................................35, 36

*In re Zappos.com, Inc.*,
108 F. Supp. 3d 949 (D. Nev. 2015)..................................................................19

*In re Zappos.com, Inc.*,
No. 12-2357, 2016 WL 2637810 (D. Nev. May 6, 2016) ...........................28, 41

## Statutes

Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101
*et seq.* .......................................................................................................44, 51, 52

California Consumer Privacy Act, Cal. Civ. Code § 1798.150 *et seq.*........44, 46, 54

California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*..............*passim*

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...........*passim*

Declaratory Judgment Act, 28 U.S.C. § 2201 ....................................................... 57

Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. § 505/1 *et seq* .............51, 53, 55

Idaho Consumer Protection Act, Idaho Code §§ 48-603, 48-603C.......44, 51, 53, 57

Louisiana Database Security Breach Notification Law, La. Rev. Stat.
    Ann. § 51:3074..................................................................................44, 48, 49, 50

Louisiana Unfair Trade Practices and Consumer Protection Law, La.
    Rev. Stat. Ann. § 51:1401 *et seq.* ........................................................44, 51, 55

Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903 *et
    seq.* ....................................................................................................44, 45, 51, 52

North Carolina Identity Theft Protection Act, N.C. Gen. Stat. Ann.
    § 75-65(i) ......................................................................................................55

North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1 *et
    seq.* ......................................................................................................45, 51

O.C.G.A. § 13-6-11.................................................................................26, 59

O.C.G.A. § 51-12-8.................................................................................35

Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.608 *et seq.* .........45, 51, 52

## Other Authorities

Federal Rule of Civil Procedure 8 ..............................................................1

Federal Rule of Civil Procedure 9(b)....................................................51, 52

Federal Rule of Civil Procedure 12(b)(1) ..................................................1

Federal Rule of Civil Procedure 12(b)(6)............................................1, 26

Defendant Horizon Actuarial Services, LLC ("**Horizon**") submits this Memorandum of Law in support of its motion to dismiss the Consolidated Class Action Complaint ("**CCAC**"), ECF No. 21, of Plaintiffs Justin Sherwood, Lindsey Quan, Tabatha Bedont f/k/a Tabatha Johnson, Greg Torrano, Jennifer Hill, Sia Moody, Anthony Ruiz, Alice Dodd, Frederick Lewis, Douglas Ackman, Ryan Evans, Amber Thomas, and Maria Chavez (collectively, "**Plaintiffs**").

## INTRODUCTION

Horizon is a small consulting firm that provides actuarial solutions to multiemployer benefit plans ("**Plans**"). It deals directly with the Plans, not their participants ("**Participants**"), though it receives from the Plans some personally identifiable information ("**PII**") of Participants. In November 2021, Horizon suffered what has become an all-too-frequent event—the holding hostage of another's data to extort payment. A ransom group ("**Ransom Group**") contacted Horizon claiming to have taken files from its servers ("**Ransom Event**"), one of which may have contained Participant PII. The Ransom Group wanted payment in exchange for not disclosing the PII. Horizon hired experts, launched an investigation, secured its servers, and notified law enforcement. Even though Horizon did not conclusively determine that PII was accessed, it made a significant ransom payment to ensure that Participant PII would not be misused or distributed.

1

Horizon contacted the Plans, sought permission to directly notify Participants, and notified them if permitted by the Plans. Horizon's notice stated that Participants' names, birth dates, and Social Security numbers ("**SSNs**") "may have been impacted." Horizon offered complimentary identity and credit monitoring services, $1 million in identity fraud coverage, and identity consultation and restoration services. Horizon and its people devoted tremendous time, effort, and cost to resolve what was a historically traumatic and expensive event for them.

That should have been the end of it. Ransom groups have a business plan, one that would not be successful for long if the groups released data after being paid. "[T]he misappropriation of the data . . . is generally the means to an end: extorting payment." *Graham v. Universal Health Serv.*, 539 F. Supp. 3d 481, 487 (E.D. Pa. 2021). "[T]he primary purpose of a ransomware attack is the exchange of money for access to data, not identity theft." *In re Practicefirst Data Breach Litig.*, No. 21-0790, 2022 WL 354544, at *5 (W.D.N.Y. Feb. 2, 2022), *report and recommendation adopted*, 2022 WL 3045319 (W.D.N.Y. Aug. 1, 2022) (collecting cases).

But then the class action lawyers came, filing multiple complaints. Consistent with Horizon choosing to pay the ransom, however, no complaint made allegations of concrete identity theft, with only one alleging vague credit report inquires that he personally believed resulted from the Ransom Event.

After consolidation in this Court, Plaintiffs filed the CCAC, which added new plaintiffs. Plaintiffs' counsel had apparently conducted a nationwide search for plaintiffs who could plausibly connect an actual identity theft or fraud to the Ransom Event. They did not find one. Instead, they filed a larded-up, 404-paragraph CCAC that contains paragraph after paragraph of boilerplate allegations (seemingly recycled from counsel's other litigation) on "data breaches," legal duty theories, and causes of action. It devotes only 11 paragraphs to the Ransom Event and then offers a series of allegations that Plaintiffs hope state cognizable injuries but that, instead, read like a list of disparate events involving credit cards, bank accounts, tax returns, "spam," and the dark web that could be found in any group of unconnected people. *Greenstein v. Noblr Reciprocal Exch.*, No. 21-4537, 2022 WL 472183, at *7 (N.D. Cal. Feb. 15, 2022) (recognizing PII "is widely available on the internet").

Once whittled down to its few core paragraphs, the CCAC is revealed to lack factual allegations necessary to create Article III standing. Plaintiffs allege no concrete injury fairly traceable to the Ransom Event.  Almost all Plaintiffs allege misuse of PII different from the PII (name, SSN, birth date) involved in the Ransom Event. Many allege no timeframe for the purported misuse of their PII. Many rely on only their personal "belief" that misuse of their PII resulted from the Ransom Event, which is deficient under the law. *Provost v. Aptos, Inc.*, No. 17-2120, 2018

WL 1465766, at *3 (N.D. Ga. Mar. 12, 2018) (Ross, J.). And none plausibly allege the required logical connection between misuse of their PII and the Ransom Event.

Not surprisingly, the CCAC's factual allegations, which cannot establish standing, also cannot state Plaintiffs' legal claims. So Plaintiffs use the volume approach. They stretch their limited material facts into seventeen causes of action, hoping some will stick: (a) four common law claims (negligence, negligence *per se*, unjust enrichment, and invasion of privacy); (b) twelve claims for violation of state consumer protection and trade practices laws; and (c) a claim for declaratory and injunctive relief. But, as this Court recently held, an entity in Horizon's situation is under no duty to safeguard Plaintiffs' PII. Order at 14–15, *Ramirez v. The Paradies Shops, LLC*, No. 21-3758 (N.D. Ga. July 27, 2022) (Ross, J.), ECF. No. 15.[1] Regardless, Plaintiffs allege no actual facts to suggest that Horizon breached any legal duty or otherwise acted unlawfully. And Plaintiffs' vague assertions of harm lack any plausible causal connection to the Ransom Event or resulting cognizable injury. As described in detail below, Plaintiffs' boilerplate allegations recycled from prior cases cannot state any of their causes of action, and the CCAC should be dismissed with prejudice.

---

[1]     A copy of this Court's decision in *Ramirez* is attached as Exhibit G to the contemporaneously filed Declaration of John J. Sullivan ("**Decl.**").

## BACKGROUND

### I.     Horizon Actuarial Services, LLC

Horizon specializes in providing innovative actuarial solutions to multiemployer pension and benefits plans. CCAC ¶ 26. Horizon deals directly with the Plans (not Participants), which provide Horizon with Participant information for business and compliance purposes. CCAC ¶¶ 26–28 & Decl. Ex. A at 1.[2] Horizon, in turn, "use[s] commercially reasonable administrative, technical and organizational measures to help secure Collected Data," though it cannot and "do[es] not guarantee the security of Personal Information" provided to Horizon at the data owner's "own risk." CCAC ¶ 30 & Decl. Ex. B at 2.

### II.    Plaintiffs' Allegations About the Ransom Event

The CCAC devotes only 11 of its 406 paragraphs to alleging facts about the Ransom Event. CCAC ¶¶ 3, 28-30, 35–39, 297. Footnotes 1 to 9, in turn, rely on Horizon's website, which the Court may therefore consider here. *MSP Recovery Claims, Series v. Metro. Gen. Ins.*, 2022 WL 2800850, at *5 (11th Cir. July 18, 2022); *Crowder v. Delta Air Lines*, 963 F.3d 1197, 1202 n.2 (11th Cir. 2020).

Per the CCAC and cited Online Notice, on November 12, 2021, Horizon

---

[2]     To assist the Court, we attach Horizon's *Notice of Data Incident* ("**Online Notice**") and *Website Privacy Policy* ("**Privacy Policy**"), each referenced in the CCAC (¶¶ 27–33 & n. 3-9), as Exhibits A and B to the Decl.

received an email from the Ransom Group claiming to have taken data from Horizon's servers. CCAC ¶¶ 28, 29, 35, 36 & Decl. Ex. A at 3. Horizon immediately initiated efforts to secure its servers, engaged a third-party expert, launched an investigation, and notified law enforcement. CCAC ¶ 36 & Decl. Ex. A at 3. The investigation revealed that a third party had accessed two servers for a limited period of time on November 10 and 11, 2021. *Id.* Horizon paid the Ransom Group for their agreement to delete and not distribute or misuse any accessed information. CCAC ¶ 297 & Decl. Ex. A at 3.

On January 13, 2022, Horizon notified the Plans of the Ransom Event and sought permission to directly notify Participants. CCAC ¶ 37 & Decl. Ex. A at 3. If authorized by the Plans, Horizon sent "Notice of Data Breach" letters ("**Notice Letters**") to Participants[3] and Attorneys General. CCAC ¶ 37 & Decl. Ex. A at 3. The Notice Letters offered Participants complimentary access to credit monitoring, $1 million in identity fraud loss reimbursement, and fraud consultation and identity theft restoration services. CCAC ¶ 65 & Decl. Ex. C at 2.

---

[3]   Torrano received a Notice Letter, CCAC ¶¶ 15, 108, and attached it to his original complaint in *Torrano v. Horizon Actuarial Servs., LLC*, No. 22-1674 (N.D. Ga. Apr. 28, 2022) (ECF No. 1-1). This Court may consider it on this motion. *Sevastopoulos v. KAS, Inc.*, No. 09-14338, 2010 WL 11596735, at *2 (S.D. Fla. Aug. 9, 2010) (considering on Rule 12(b)(6) motion document attached to prior complaint and referenced in amended complaint). It is attached here as Ex. C to the Decl.

Horizon's investigation did not conclusively determine that the Ransom Group actually accessed Participant PII. Accordingly, Horizon **did not state** in its Notice Letters that Participant PII was accessed or stolen, stating only that potentially sensitive information "may have been impacted." Decl. Ex. C at 1.

## III.   Plaintiffs Allegations of Harm and Causes of Action

### A.   What Plaintiffs Allege About Their PII and Harm

Plaintiffs are Participants who allegedly received Notice Letters on or after March 23, 2022. CCAC ¶¶ 11–24. Based on the notices, Plaintiffs each allege that his or her name, birth date, and SSN were accessed or obtained as a result of the Ransom Event. *Id.* ¶¶ 13, 90, 96, 108, 114, 121, 128, 139, 145, 152, 160, 167, 173.

Soon thereafter, Ruiz filed a putative class action complaint in the Northern District of California. Compl., *Ruiz v. Horizon Actuarial Servs., LLC*, No. 22-2279 (N.D. Ga. Apr. 12, 2022), ECF No. 1. Within days, copycat complaints followed here and in other courts. This Court later consolidated eight actions.[4] On July 13, 2022, Plaintiffs filed their CCAC. ECF No. 21.

Relying on Horizon's Online Notice and Notice Letters, CCAC ¶¶ 26–43, Plaintiffs vaguely allege that Horizon "failed to take appropriate steps to protect the

---

[4]     ECF No. 16; Order, *Ruiz*, No. 22-1924, ECF No. 20; Order, *Chavez v. Horizon Actuarial Servs., LLC*, No. 22-2858 (N.D. Ga. July 1, 2022), ECF No. 15; *Doe I v. Horizon Actuarial Servs., LLC*, No. 22-2358 (N.D. Ga. Aug. 19, 2022), ECF No. 26.

PII of Plaintiffs," thereby allowing "unauthorized access to the[ir] sensitive and confidential data." *Id.* ¶¶ 2, 50. They allege the following injuries: (i) "increased risk of identity theft and fraud"; (ii) mitigation efforts; (iii) "diminution in the value" of PII; (iv) "violation of . . . privacy rights"; (v) "anger and frustration"; (vi) lost benefit of a bargain; and (vii) purported indicia of identity theft. *Id.* ¶¶ 91–94, 97–100, 109–112, 115–119, 122–126, 134–137, 140–143, 146–150, 153–158, 161–165, 168–171, 174–178, 314, 329. Much of these boilerplate allegations and injuries appear to be recycled from Plaintiffs' counsel's prior cases. *Compare, e.g.*, CCAC ¶¶ 48–50, 198–201, 221, 241–247, *with* Compl. ¶¶ 36–38, 69–72, 76–77, 88–94, *Levinson v. Intuit, Inc.*, No. 22-2477 (N.D. Cal. Apr. 22, 2022), ECF No. 1, *and* Compl. ¶ 34, ¶¶ 92–95, 131–134, *Kelly v. R.R. Donnelly & Sons Co.*, No. 22-4301 (N.D. Ill. Aug. 15, 2022), ECF No. 1.

Only seven Plaintiffs claim to have experienced something arguably akin to fraud or identity theft. Hill, Moody, and Lewis allege unauthorized charges and/or access to their credit cards. CCAC ¶¶ 115, 126, 153. Ruiz vaguely alleges unspecified "inquires" on his credit report. *Id.* ¶ 141. Dodd alleges a "fraudulent tax return" filed in his name. *Id.* ¶ 146. Evans alleges a fraudulent "attempt" to open a bank account. *Id* ¶ 164. Chavez uniquely alleges that she temporarily lost access to her pension fund, *id.* ¶ 178, but says nothing more about it.

## B.     What Plaintiffs Do Not Allege About Their PII and Harm

As to PII, the CCAC does not allege that any Plaintiff's email or home address, phone number, credit card number, or bank account information was or may have been accessed in the Ransom Event. They cannot. The Notice Letters on which the CCAC relies state only that Plaintiffs' "Social Security number, name, and birth date" "*may have been impacted*" by the Ransom Group:

> **What Information Was Involved?** Our investigation determined that the following types of information related to you ***may have been*** impacted: Social Security number, name, birth date.

Decl. Ex. C at 1 (emphasis added); Decl. Ex. A at 3. Yet Plaintiffs' allegations of purported harm due to the Ransom Event almost exclusively rely on types of PII ***not listed*** in the Notice Letters and Online.

As to access to PII by the Ransom Group, the CCAC alleges that Horizon "admitted" that Plaintiffs' "PII" was "wrongfully accessed" and "stolen." *Id.* ¶¶ 38, 94, 115, 212. The CCAC, however, relies exclusively on the disclosures in Horizon's Notice Letters and Online Notice, *id.* ¶¶ 15, 29, 35–36 n.7, 43, which only state that limited types of PII "may have been impacted." "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *accord Celestine v. Capital One*, 741 F. App'x 712, 713 (11th Cir. 2018).

As to Horizon's security systems, Plaintiffs make no factual allegations on any particular vulnerability, whether Horizon was aware of that vulnerability, how the Ransom Group purportedly exploited it, or whether Horizon could have prevented its exploitation. Instead, Plaintiffs allege more boilerplate on standards (CCAC ¶ 53) that have appeared in other complaints prepared by Plaintiffs' counsel. *Compare* CCAC ¶ 53 *with* Compl. ¶ 43, *Levinson*, No. 22-2477, ECF No. 1, *and* Compl. ¶¶ 54–55, *Kelly*, No. 22-4301, ECF No. 1.

As to Plaintiffs' history of PII exposure and identity theft, the CCAC is silent. It does not address whether any Plaintiff experienced previous (or subsequent) unauthorized use of or access to their PII. This causes a standing problem, as Plaintiffs concede that billions of records have been exposed in thousands of "high profile data breaches" over the past few years.  CCAC ¶¶ 45, 48.

### C.    Plaintiffs' Causes of Action and Requested Relief

Despite these and other holes in the CCAC, Plaintiffs assert seventeen separate Counts against Horizon on behalf of a putative nationwide class and eight statewide subclasses of persons "whose PII was compromised in the" Ransom Event. *Id.* ¶¶ 7, 185 (emphasis removed). Plaintiffs seek an award of class-wide damages, as well as broad injunctive relief requiring Horizon to, *inter alia*, adopt unnecessary and costly security measures. *Id.*, Prayer for Relief ¶¶ D–E. Plaintiffs' counsel has

asserted these same boilerplate claims, damages, and need for injunctive relief elsewhere, which they have not tailored to Horizon's alleged conduct.[5]

## **ARGUMENT**

## I.   **Plaintiffs Lack Article III Standing**

Article III's "case or controversy" clause requires a plaintiff to show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Thus, Plaintiffs must allege that they, at minimum, have or imminently will suffer a concrete injury in fact that is "fairly traceable" to the Ransom Event. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). The injury cannot result from a third party's independent action.  There must be "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs have the burden to establish standing. *TransUnion*, 141 S. Ct. at 2207. An "attenuated" or "speculative chain of possibilities" is insufficient, *Clapper*

---

[5]    *Compare* CCAC ¶¶ 198–201, 221, 241–247, Prayer for Relief, *with* Compl. ¶¶ 69–72, 76–77, 88–94, *Levinson*, No. 22-2477, ECF No. 1 (similar negligence and unjust enrichment allegations), *and* Compl. ¶¶ 92–95, 131–134, *Kelly*, No. 22-4301, ECF No. 1 (same), *and* Compl. ¶¶ 62, 68, 111–112, 116, *Hargrove v. Wilderness Sports Warehouse, LLC*, No. 22-1716 (N.D. Cal. Jan. 11, 2022), ECF No. 1 (same), *and* Compl. Prayer for Relief, *Silbaugh v. Monongalia Health Sys.*, No. 22-0033 (N.D. W.Va. Apr. 12, 2022), ECF No.1 (same relief).

*v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 (2013), as are allegations creating "too many steps" between the tort and the harm, *Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 87 (11th Cir. 2022). Conclusory or boilerplate allegations and legal conclusions may not be credited. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, Plaintiffs must allege facts that "plausibly" demonstrate each element of standing. *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 996 (11th Cir. 2020).

### A.    Plaintiffs' Alleged Injuries Are Not Sufficiently Concrete

A sufficiently "concrete" injury "must be 'de facto,' that is, it must actually exist." *Spokeo*, 578 U.S. at 339–40. It cannot be "conjectural or hypothetical; it must be "actual or imminent," "real . . . not abstract." *Id.*

Plaintiffs allege no such injury. Instead, they manufacture a series of abstract, boilerplate "harms": (i) "increased risk of identity theft"; (ii) mitigation efforts; (iii) "diminution in the value" of PII; (iv) "violation of . . . privacy rights"; (v) "anger and frustration"; (vi) lost benefits of a bargain; and (vii) indicia of fraud. CCAC ¶¶ 91–94, 97–100, 109–112, 115–119, 122–126, 134–137, 140–143, 146–150, 153–158, 161–165, 168–171, 174–178, 314, 329.

### i.    The Increased Risk of Harm Is Not Sufficiently Concrete

#### (1)  The Risk of Future Harm Does Not Support Standing to Seek Damages

The Supreme Court set the standard here. "In a suit for damages, the mere risk

of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion*, 141 S. Ct. at 2210. In *TransUnion*, a risk of future disclosure of disparaging information in credit files did not establish standing for class members to seek damages. *Id.* at 2211. The risk must first "materialize[]" into a concrete, present injury—*i.e.*, there must first be actual disclosure resulting in concrete consequences. *Id.*; *Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 19-14434, -- F.4th --, 2022 WL 4102824, at *10 (11th Cir. Sept. 8, 2022) (discussing *TransUnion*).

Plaintiffs allege that they face an "increased risk of identity theft and fraud" due to the Ransom Event. CCAC ¶¶ 93, 99, 106, 111, 118, 124, 136, 143, 150, 157, 163, 170, 176. The risk is hypothetical. This Court should join the many courts in data breach cases that applied *TransUnion* to hold that the "'mere risk of future harm,' divorced from actual harm, is insufficient to support standing in a suit for damages." *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *6 (D.N.J. Dec. 16, 2021); *C.C. v. Med-Data*, No. 21-2301, 2022 WL 970862, at *7 (D. Kan. Mar. 31, 2022) (applying *TransUnion*, finding plaintiffs lack standing following data breach involving SSNs); *Legg v. Leaders Life Ins.*, 574 F. Supp. 3d 985, 993 (W.D. Okla. 2021); *I.C. v. Zynga, Inc.*, No. 20-1539, 2021 WL 3271187, at *2 (N.D. Cal. July 30, 2021).

### (2)   There Is No "Certainly Impending" Risk of Future Harm Necessary to Seek Injunctive Relief

Potential future injury establishes standing to seek injunctive relief only if "the risk of harm is sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210; *Clapper*, 568 U.S. at 401 (future injury must be "certainly impending"). "[C]onclusory allegations of an elevated risk of identity theft" after a data event "[are] simply not enough to confer standing." *Tsao v. Captiva MVP Rest. Partners*, 986 F.3d 1332, 1343–44 (11th Cir. 2021) (citations omitted). Rather, a plaintiff must allege "specific evidence of some misuse of class members' data . . . sufficient to show that the threatened harm of future identity theft [is] 'certainly impending.'" *Id.* Speculation cannot establish this risk. *Clapper*, 568 U.S. at 415 n.5.

Plaintiffs do not even get out of the gate. They seek an order requiring Horizon "to employ [additional] security protocols" to thwart any possible future "data breach." CCAC ¶¶ 259–260. But standing to seek injunctive relief requires **imminence**, not possibility. *Clapper*, 568 U.S. at 409; *TransUnion*, 141 S. Ct. at 2210. Plaintiffs allege no facts to suggest the Ransom Event is **likely** to recur, let alone that it is "certainly impending." *Clapper*, 568 U.S. at 401; *see infra* Part II.C (injunctive relief serves no purpose in data cases).

Nor have they alleged "specific evidence" showing any Plaintiff faces a "certainly impending" threat of identity theft. *Tsao*, 986 F.3d at 1344. Plaintiffs

allege no "misuse" of PII "fairly traceable" to the Ransom Event, *See infra* Part I.B.

First, the ransom was paid, CCAC ¶ 297, cutting off the risk of identity theft. "[T]he primary purpose of a ransomware attack is the exchange of money for access to data, not identity theft." *In re Practicefirst*, 2022 WL 354544, at *5; *Graham*, 539 F. Supp. 3d at 487 (access of data is a "means to an end: extorting payment"). As "[t]he target of a ransomware attack is the holder" of data, not the data itself, a court can only speculate on whether plaintiffs face a risk once a ransom is paid. *Graham*, 539 F. Supp. 3d at 487; *Aponte v. Ne. Radiology*, No. 21-5883, 2022 WL 1556043, at *4 (S.D.N.Y. May 16, 2022) (no standing absent allegation that "breach was a targeted attempted to perpetuate identity theft"); *Quintero v. Metro Santurce, Inc.*, No. 20-1075, 2021 WL 5855752, at *5 (D.P.R. Dec. 9, 2021) (no standing following "garden-variety ransomware attack").

Second, the risk that anyone would misuse data stored by Horizon to harm Plaintiffs is too remote and conditional. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3d Cir. 2011). One court effectively explained it this way:

> Plaintiffs will suffer harm only *if* the hackers actually intend to use Plaintiffs' PII to commit identity theft . . . ; *if* the hackers attempt to use the PII to commit such identity theft . . . ; *if* they actually succeed . . . ; and *if* the identity theft . . . causes harm to Plaintiffs. In light of the uncertainty over whether any of these events will occur, the Court cannot find that Plaintiffs face any harm that is "certainly impending."

*Duqum v. Scottrade, Inc.*, No. 15-1537, 2016 WL 3683001, at *4 (E.D. Mo. July 12,

15

2016), *aff'd sub nom. Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017). The risk is more remote here, as Plaintiffs cannot allege information accessed or exfiltrated by the Ransom Group. *Blahous v. Sarrell Reg'l Dental Ctr.*, No. 19-0798, 2020 WL 4016246, at *1, *7 (M.D. Ala. July 16, 2020) (no standing absent evidence of exfiltration); *Aponte*, 2022 WL 1556043, at *4 ("unauthorized" access insufficient to find risk of identity theft "substantial or imminent"); *Travis v. Assured Imaging LLC*, No. 20-0390, 2021 WL 1862446, at *6 (D. Ariz. May 10, 2021) (no standing where "Notice of Data Breach . . . does not state that Plaintiffs' personal information was stolen"). "[N]o Article III standing exists if a plaintiff's theory of injury rests on an 'attenuated chain of inferences necessary to find harm.'" *Cooper v. Bonobos, Inc.*, No. 21-0854, 2022 WL 170622, at *2 (S.D.N.Y. Jan. 19, 2022) (quoting *Clapper*, 568 U.S. at 414 n.5); *accord Low v. LinkedIn Corp.*, No. 11-1468, 2011 WL 5509848, at *6 (N.D. Cal. Nov. 11, 2011); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052–53 (E.D. Mo. 2009).

Third, the potential involvement of SSNs does not render the risk any more "imminent." The Eleventh Circuit held last year that, based on the best available study, "most data breaches have not resulted in detected incidents of fraud" and, therefore, present no "substantial risk" of future injury. *Tsao*, 986 F.3d at 1343; *accord In re SuperValu,* 870 F.3d 763, 771 (8th Cir. 2017). Plaintiffs cite no report

16

to the contrary, relying instead on generic consumer warnings that "[s]omeone illegally using your Social Security number . . . can cause a lot of problems." CCAC ¶ 58. "These reports do nothing to clarify the risks to the plaintiffs in this case." *Tsao*, 986 F.3d at 1343; *accord NCS Pearson*, 2020 WL 3642325, at *3 n.2.

Finally, as this Court recognized, one Plaintiff's injury does not indicate any other Plaintiff faces an ***imminent*** risk. *Provost v. Aptos*, No. 17-2120, 2018 WL 8263122, at *4–5 (N.D. Ga. Dec. 21, 2018) (Ross, J.); *see also In re SuperValu*, 870 F.3d at 770–72 (allowing only plaintiffs alleging past injuries to proceed); *Graham*, 539 F. Supp. 3d at 487 (same); *In re Brinker Data Incident Litig.*, No. 18-0686, 2019 WL 3502993, at *6 (M.D. Fla. Aug. 1, 2019) (same). The question is not whether the Ransom Event *could* result in harm, but whether Plaintiffs have alleged "specific evidence . . . sufficient to show that the threatened harm of future identity theft [is] 'certainly impending.'" *Tsao*, 986 F.3d at 1343–44. They have not.

### ii. Standing Cannot Be Manufactured Through Self-Inflicted Mitigation Efforts

As this Court recognized, "allegations of mitigation efforts do not confer standing." *Provost*, 2018 WL 8263122, at *5. A plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Hence, "in data breach cases, courts consistently hold that the cost to mitigate the risk of future

harm does not constitute an injury in fact unless the future harm being mitigated against is itself imminent." *Duqum*, 2016 WL 3683001, at *6; *accord Tsao*, 986 F.3d at 1344–45. Plaintiffs, who have not alleged facts to establish "certainly impending" identity theft (*see supra* Part I.A.i.(2)), "cannot conjure standing here by inflicting injuries on [themselves]." *Tsao,* 986 F.3d at 1345.

### iii.    Diminution in Value of PII Is Not a Concrete Injury

PII has no "intrinsic value" that can be lost. *In re Cmty. Health Sys*, No. 15-0222, 2016 WL 4732630, at *8–9 (N.D. Ala. Sept. 12, 2016). Even if it did, Plaintiffs do not allege "how the data has been devalued" for them. *In re Sci. Apps. Int'l (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014). As this Court held, even if "a person's data is a valuable commodity . . . [Plaintiffs] still fail[] to allege with particularity any facts explaining how [their] PII is less valuable than it was before the Breach." *Provost*, 2018 WL 8263122, at *4 (Ross, J.); *see also TransUnion*, 141 S. Ct. at 2211 (no standing until "the risk of future harm materializes"). Absent such allegations, diminution in the value of PII will not support standing in data cases. *E.g.*, *Stamat v. Grandizio Wilkins Little & Matthews,* No. 22-0747, 2022 WL 3919685, at *7 (D. Md. Aug. 31, 2022); *Cooper*, 2022 WL 170622, at *5; *Travis*, 2021 WL 1862446, at *10; *Fero v. Excellus Health Plan,* 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017); *Welborn v. IRS*, 218 F. Supp. 3d 64, 78

(D.D.C. 2016); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016); *Low*, 2011 WL 5509848, at *4.

### iv.   Lost Privacy Is Not a Concrete Injury

"[L]oss of privacy, in and of itself, is not a concrete harm that can provide the basis for Article III standing." *Med-Data*, 2022 WL 970862, at *10; *accord Duqum*, 2016 WL 3683001, at *8. There is no law "holding otherwise in the data breach context." *Darnell*, 2021 WL 1124792, at *5 (collecting cases). Thus, to establish standing, Plaintiffs must allege facts demonstrating "damages or injury due to a loss of privacy." *Duqum*, 2016 WL 3683001, at *8; *see also Stamat*, 2022 WL 3919685, at *6; *Med-Data*, 2022 WL 970862, at *10; *In re Practicefirst*, 2022 WL 354544, at *8; *Travis*, 2021 WL 1862446, at *10; *In re SuperValu*, 2016 WL 81792, at *8; *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015). Plaintiffs do not.

### v.   Anxiety and Anger Are Not Injuries in Fact

Emotional distress is insufficient to establish standing following a data event. *E.g.*, *Reilly*, 664 F.3d at 44; *Stamat*, 2022 WL 3919685, at *7; *Legg*, 574 F. Supp. at 993–94; *In re VTech Data Breach Litig.*, No. 15-10889, 2017 WL 2880102, at *5 n.6 (N.D. Ill. July 5, 2017); *Travis*, 2021 WL 1862446, at *10. Rather, allegations of emotional distress must be supported by physical harm. *E.g.*, *Attias v. CareFirst, Inc.*, 518 F. Supp. 3d 43, 49 (D.D.C. 2021). Plaintiffs make no such allegations.

### vi.   Plaintiffs Allege No Lost Benefit of Any Bargain

Certain Plaintiffs allege that they never would have given PII to Horizon or purchased its services if they knew that Horizon had deficient security, and so they were injury by the "price received by [Horizon]." CCAC ¶¶ 314, 329. But Plaintiffs did not provide PII to Horizon or purchase Horizon's services. Horizon provided services to the Plans, who in turn provided Participant data to Horizon. *Id.* ¶¶ 26–28. Further, Plaintiffs do not allege that they "paid anything specific for [privacy] protection," so they have no claim for "overpayment." *Provost*, 2018 WL 8263122, at *4; *see also In re Practicefirst*, 2022 WL 354544, at *8 n.11; *Med-Data*, 2022 WL 970862, at *9; *Quintero*, 2021 WL 5855752, at *7; *Legg*, 574 F. Supp. at 995.

### vii.   Experiencing Indicia of Identify Theft Is Not a Sufficiently Concrete Injury to Support Standing

No Plaintiff has sufficiently alleged any identity theft fairly traceable to the Ransom Event. *See infra* Part I.B. Regardless, a fraudulent act alone does not establish standing; rather, a plaintiff must allege a "particularized and concrete injury suffered from the attempted fraud[]." *Whalen v. Michaels Store*, 689 F. App'x 89, 90 (2d Cir. 2017). Each allegation of identity theft conspicuously lacks this required harm. *See* CCAC ¶ 164 (alleging "attempt" to open bank account); *id.* ¶ 141 (alleging "inquiries" on credit report, but no consequence); *id.* ¶ 146 (alleging "fraudulent tax return," but no consequence); *id.* ¶¶ 115, 126, 153 (alleging unauthorized

20

access/charges to credit card accounts, but no unreimbursed expense).

## B.    The Alleged Unauthorized Use of Plaintiffs' PII Is Not Fairly Traceable to the Ransom Event

Everyone's personal "[i]nformation is widely available on the internet," making it "difficult to trace" a data breach to a specific identity theft. *Greenstein*, 2022 WL 472183, at *7. Hence, in data cases, plaintiffs cannot simply claim, without supporting factual allegations, a relationship between a data event and subsequent misuse of PII. They must "plausibly show" a link. *Springmeyer v. Marriott Int'l*, No. 20-0867, 2021 WL 809894, at *2 (D. Md. Mar. 3, 2021). Moreover, because the alleged fraud was committed by third parties (not Horizon), "Plaintiffs must also allege facts to show that, absent the alleged unlawful actions by the [Defendant], 'there is a substantial probability that they would not be injured.'" *Chamber of Com. v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 504 (1975)). If Plaintiffs fail to allege a non-conclusory, "logical connection" between the alleged incidents, the CCAC must be dismissed. *See In re Cmty. Health Sys*, 2016 WL 4732630, at *12; *Greenstein*, 2022 WL 472183, at *7; *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1085–86 (E.D. Cal. 2015); *In re Sci. Apps.*, 45 F. Supp. 3d at 31; *Welborn*, 218 F. Supp. 3d at 79.

Plaintiffs cannot establish such a connection. Instead, Plaintiffs allege a hodge-podge of purportedly unauthorized uses of their PII that they "believe[] are a

result" of the Ransom Event. CCAC ¶ 141; *see also, e.g.*, *id.* ¶ 94. Plaintiffs fail to allege a temporal connection (when the unauthorized use occurred), a causal connection (how that use resulted from the Ransom Event), or a logical connection (how the data misused could have come from Horizon). Plaintiffs fail to allege that their PII had not been subject to unrelated exposure or misuse, such as the CCAC's alleged misuse (¶¶ 2, 115, 126, 153) of certain Plaintiffs' payment card information, which was not stored on Horizon's servers.

### i. Bedont and Chavez Allege No Unauthorized Use of Their PII

Bedont and Chavez make no allegations whatsoever of any unauthorized use of their PII. Their claims should be dismissed for lack of standing.

### ii. "Spam" Is Not Traceable to the Ransom Event

Quan, Torrano, Hill, Moody, Ackman, Lewis, Evans, and Thomas allege a "substantial increase" in "spam" communications "since" the Ransom Event, which they "believe[]" is linked to the Ransom Event. CCAC ¶¶ 100, 112, 119, 125, 126, 137, 158, 165, 171. Sherwood alleges a "substantial number" of "spam" calls and texts, but does not allege an increase from past history. *Id.* ¶ 94. These allegations do not plausibly suggest a "logical connection" with the Ransom Event, which involved no contact information. *Id.* ¶¶ 90, 96, 108, 114, 121, 128, 152, 160, 167; *see Unchageri v. Carefirst of Md., Inc*., No. 16-1068, 2016 WL 8255012, at *5–8

(C.D. Ill. Aug. 23, 2016) (no standing where phone number not exposed in data event). Spam cannot "plausibly be linked" to a data event given its pervasiveness. *Cooper*, 2022 WL 170622, at *5; *Fernandez*, 127 F. Supp. 3d at 1086 (finding increased spam not plausibly traceable to data event as plaintiff's address may be publicly available and easy to locate); *In re Practicefirst*, 2022 WL 354544, at *5 n.8 (collecting cases). Also, Plaintiffs' "belief" in a causal relationship is not enough to create standing. *Provost*, 2018 WL 1465766, at *3 (Ross, J.).

### iii.    Credit Card Fraud Is Not Traceable to the Ransom Event

Hill and Lewis allege unauthorized charges to their preexisting credit cards, CCAC ¶¶ 115, 153, and Moody alleges the unauthorized email was linked to her preexisting credit card account, *id.* ¶ 126. The Ransom Event did not involve credit card or bank information, only SSNs, names, and birthdates. *See id.* ¶¶ 2, 114, 121, 152. "At a minimum, [Plaintiffs] must allege facts that indicate that the information stolen . . . is the same type of information used to commit their injuries." *Welborn*, 218 F. Supp. 3d at 79–80. Payment fraud is plainly the result of unrelated, independent events. *In re Sci. Apps.*, 45 F. Supp. 3d at 31 (no standing based on "unauthorized charges" to "existing" accounts where data event did not involve payment information); *In re Cmty. Health*, 2016 WL 4732630, at *12 (same).

23

### iv.   No Alleged Dark Web Exposure Is Traceable to the Ransom Event

Uniquely among Plaintiffs—all of whom allege spending time or money to monitor their information after the Ransom Incident, *see, e.g.*, CCAC ¶ 140—Ackman and Lewis vaguely claim they were "notified that [their] PII is now exposed on the dark web." *Id.* ¶¶ 129, 154. They do not, however, allege what type of PII was exposed, when this exposure occurred, or facts indicating the "exposed" PII was obtained from Horizon's servers. Nor do they allege that their PII was downloaded or subsequently misused from the dark web. In fact, Lewis's separate experience of unrelated credit card fraud, *see supra* Part I.B.iii, strongly indicates any dark web exposure pertains to an unrelated, independent event. Plaintiffs give this Court no factual basis on which to plausibly infer any connection between the Ransom Event and the notice to Ackman and Lewis of dark web exposure.

### v.   The Allegedly Attempted Tax, Bank, and Credit Report Fraud Are Not Traceable to the Ransom Event

Ruiz alleges multiple unauthorized inquiries "made on his credit reports." CCAC ¶ 141. But he does not allege when these "inquiries" were made, for what type of account, or what PII was used—despite spending "several hours" reviewing credit reports. *Id.* ¶ 140. He acknowledges, instead, that the only basis for the supposed connections is his personal "belie[f]. *Id.* ¶ 141. That is insufficient to

support standing. *See Provost*, 2018 WL 1465766, at *3 (Ross, J.).

Dodd similarly alleges "a fraudulent tax return [was] filed on her behalf." CCAC ¶ 146. But Dodd does not allege when this filing happened (*e.g.*, tax year) or any non-conclusory fact tying it to the Ransom Event. A plaintiff cannot establish standing where "[t]he Complaint omits the dates of [unauthorized use of PII] . . . leaving the reader to guess whether those errors even arose after, rather than before, the [data event]." *Fernandez*, 127 F. Supp. 3d at 1085–86.

Finally, Evans alleges that someone "attempt[ed] to open a new bank account in his name." CCAC ¶ 164. As Evans admits, this "attempt" resulted in no injury in fact. *Id.*; *cf. Whalen*, 689 F. App'x at 90. Regardless, Evans alleges no facts suggesting a link between this "attempt" and the Ransom Event, despite spending "hours" researching the Ransom Event, reviewing records, and "contacting his bank." CCAC ¶¶ 161, 164.

These Plaintiffs fail to allege the "concrete facts" necessary to move traceability beyond pure speculation. *Clapper*, 568 U.S. at 414, 414 n.5. This is unsurprising. Plaintiffs allege that billions of records have been exposed in "recent high profile" incidents, with almost 2,000 reported "data breaches" in 2021 alone. CCAC ¶¶ 45, 48. As personal "[i]nformation is widely available on the internet," it is "difficult to trace" any one instance of fraud to a specific data breach. *Greenstein*,

2022 WL 472183, at *7.

## II.   Each of Plaintiffs' Causes of Action Fails as a Matter of Law

A complaint must allege facts that, if accepted as true, state a claim "plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations that are merely consistent with a defendant's liability falls "short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Additionally, allegations sufficient to establish standing do not necessarily satisfy the standards to state a claim under Rules 8 and 12(b)(6). *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010); *accord Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021).

Plaintiffs assert seventeen claims, which can be placed in three categories: (A) common law claims of negligence, negligence *per se*, unjust enrichment, and invasion of privacy; (B) statutory claims for violation of state consumer protection and trade practices laws; and (C) declaratory and injunctive relief claims. Plaintiffs also seek attorneys' fees under O.C.G.A. § 13-6-11. Each claim fails.

**A.     Plaintiffs Fail to Sufficiently Allege Their Common Law Claims**

     **i.     A Choice of Law Analysis Is Premature**

Plaintiffs are California, Ohio, Louisiana, Arkansas, Illinois, North Carolina, Idaho, Oregon, and Nevada residents. CCAC ¶¶ 11–24. Horizon addresses their claims under the laws of Georgia and their home states, as the situs of events has yet to be established.[6]

     **ii.     Plaintiffs' Negligence (Count I) and Negligence *Per Se* (Count II) Claims Fail**

To state a negligence claim, Plaintiffs must allege: (1) a legal duty of care; (2) breach; (3) causation; and (4) a cognizable injury. *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011).[7] Plaintiffs fail to establish any of these elements.

     **(1)   No Common Law Duty to Safeguard PII Exists**

There is no common law duty to safeguard PII from unlawful third-party actions. Order at 14–15, *Ramirez*, No. 21-3758 (Ross, J.), ECF. No. 15 (citing

---

[6]     When state laws overlap on certain elements of a claim, we cite the additional state law in footnotes.

[7]     These basic elements are the same across states. *Paz v. California*, 22 Cal. 4th 550, 553 (2000); *Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 27 (Ill. App. Ct. 2010); *Bostic Packaging v. City of Monroe*, 562 S.E.2d 75, 79 (N.C. Ct. App. 2002); *Or. Steel Mills. v. Coopers & Lybrand,* 83 P.3d 322, 327–30 (Or. 2004); *Jeffers v. Olexo*, 539 N.E.2d 614, 616 (Ohio 1989); *Ark. Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 499 (Ark. 2020); *Belle Chasse Auto. Care v. Advanced Auto Parts*, No. 08-1568, 2009 WL 799760, at *1 (E.D. La. Mar. 24, 2009); *Harrington v. Syufy Enters.*, 931 P.2d 1378, 1380 (Nev. 1997); *Nation v. State, Dep't of Corr.*, 158 P.3d 953, 965 (Idaho 2007).

*McConnell v. Dep't of Lab.*, 828 S.E.2d 352 (Ga. 2019)) & Decl. Ex. G. Courts across jurisdictions have reached the same conclusion.[8]

Plaintiffs allege that Horizon owed them a duty because data events are inherently "foreseeable." CCAC ¶ 204. This Court rejected that argument in *Ramirez*, a case in which a plaintiff's SSN was exposed in a data breach. *See* Order at 1–2, No. 21-3758, ECF. No. 15. This Court held that the prevalence of breaches, without more, does not create a duty; rather, a plaintiff must sufficiently allege that "Defendant . . . had reason to know of or guard against ***the type*** of ransomware attack experienced" through "warnings or alerts" "directed specifically toward Defendant." *Id.* at 18–19 (emphasis added) (citing *Sheffler*, 2022 WL 1815505, at *5).

Plaintiffs offer allegations about none of this. They allege no facts suggesting that Horizon knew that it faced a "high risk of a data breach" or that ransom groups were targeting entities like Horizon. *Id.* at 18. They do not allege that Horizon knew of a vulnerability in its security. Instead, Plaintiffs rely on boilerplate allegations of

---

[8]      *Cmty. Bank of Trenton v. Schnuck Markets*, 887 F.3d 803, 816 (7th Cir. 2018) (under Illinois law); *Murray v. ILG Techs.*, 798 F. App'x 486, 492 (11th Cir. 2020) (under Georgia law); *Perdue v. Hy-Vee*, 455 F. Supp. 3d 749, 760 (C.D. Ill. 2020); *Sheffler v. Americold Realty Tr.*, No. 21-1075, 2022 WL 1815505, at *5–6 (N.D. Ga. Jan. 19, 2022) (under Ohio, Georgia, and Illinois law); *McGlenn v. Driveline Retail Merch.*, No. 18-2097, 2021 WL 4301476, at *6 (C.D. Ill. Sept. 21, 2021); *In re Zappos.com, Inc.*, No. 12-2357, 2016 WL 2637810, at *6 (D. Nev. May 6, 2016), *rev'd on other grounds*, 888 F.3d 1020 (9th Cir. 2018); *Nation*, 158 P.3d at 965.

generic "warning[s]" and the "prevalence" of "high profile" breaches. CCAC ¶¶ 48–50. These allegations are as deficient here as they were in *Ramirez*.

### (2)   The FTC Act Does Not Create a *Per Se* Tort Duty

Plaintiffs allege that Horizon acted negligently by "[f]ailing to comply with FTC guidelines for cybersecurity" in violation of the FTC Act. CCAC ¶¶ 67–71, 78(e), 230–231. This *per se* theory of negligence fairs no better.

First, neither California, Louisiana, nor Arkansas recognize an independent claim for negligence *per se*.[9] Count II must therefore be dismissed as to Torrano, Ruiz, Dodd, Lewis, Thomas, and Chavez.

Second, Plaintiffs allege no violation of the FTC Act. FTC "guidelines" contain no specific duty "***mandated*** by the FTC Act," and so failure to comply with these "recommendations" is not negligence *per se*. *In re Brinker*, No. 18-0686, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020). Even if it were, Plaintiffs' bald assertion that Horizon violated the "guidelines" is a legal conclusion insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

Third, "the FTC Act creates no private right of action." *Pica v. Delta Air*

---

[9]      *See Dugas v. Starwood Hotels & Resorts Worldwide*, No. 16-0014, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) ("[N]egligence *per se* does not state an independent cause of action."); *La. Galloway v. State ex rel. Dep't of Transp. & Dev.*, 654 So. 2d 1345, 1347 (La. 1995) (similar); *Loftis v. Credit Acceptance*, No. 10-00496, 2011 WL 976621, at *6 (E.D. Ark. Mar. 18, 2011) (similar).

*Lines, Inc.*, No. 18-2876, 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (dismissing claim). Negligence *per se* "cannot be read so as to create a civil action" if the legislature did not intend one. *Williford v. Bayview Loan Servicing*, No. 16-4268, 2017 WL 11151639, at *6 (N.D. Ga. July 14, 2017), *report and recommendation adopted*, 2017 WL 11151638 (N.D. Ga. Aug. 7, 2017) (Ross, J.). In other words, Plaintiffs cannot improperly create an FTC Act private right of action disguised as a negligence *per se* claim. *Id.*; *see also Owens v. Perdue Foods*, No. 20-0307, 2021 WL 2323718, at *1 (M.D. Ga. June 7, 2021) (statute lacking private right of action cannot be used "state a cognizable negligence per se claim").[10]

Finally, only persons in the class that a law "was intended to protect" may use the *per se* doctrine. *Williford*, 2017 WL 11151639, at *6.[11] The FTC Act "applies to consumers, competitors, or those harmed by destruction of competition." *Sheffler*, 2022 WL 1815505, at *6. Plaintiffs are none of these. They are Participants who, in their employment capacity, provided their PII to the Plans, which was then provided to Horizon for actuarial services. CCAC ¶¶ 26–28. No authority extends "Section 5 of the FTC Act to the employer/employee context." Order at 20 n.6, *Ramirez*, No.

---

[10]   Courts in other jurisdictions agree. *See, e.g.*, *In re SuperValu*, 925 F.3d 955, 964 (8th Cir. 2019) (Illinois law); *In re Brinker*, 2020 WL 691848, at *9 n.11 (Nevada law); *Pica*, 2018 WL 5861362, at *9 (California law).

[11]   *See also, e.g.*, *Buoy v. Soo Hee Kim*, 221 P.3d 771, 779 (Or. Ct. App. 2009) (same under Oregon law).

21-3758, ECF No. 15 (quoting *Sheffler*, 2022 WL 1815505, at *6).

### (3)   Plaintiffs Fail to Allege a Causal Link

"[N]o matter how negligent a party may be, if his act stands in no causal relation to the injury it is not actionable." *Riggins v. City of St. Marys*, 589 S.E.2d 691, 694 (Ga. Ct. App. 2003). Plaintiffs ask this Court to presume causation of their alleged injury by the Ransom Event. Under the law, it cannot (*supra* Part I.B).

First, the required causal chain is broken by the "intervening intentional criminality of another person." *Buchler v. Oregon*, 853 P.2d 798, 804 (Or. 1993).[12] Here, multiple intervening criminal actors—the Ransom Group and alleged identity thieves—break the causal chain. *See* CCAC ¶¶ 36, 84. Of course, a defendant may owe an independent duty to prevent a third-party's crime, thus restoring the causal chain; however, "without foreseeability that a criminal act will occur, no duty . . . to prevent that act arises." *Days Inns of Am. v. Matt*, 454 S.E.2d 507, 508 (Ga. 1995).[13]

---

[12]     *See also, e.g.*, *Herndon v. Torres*, 249 F. Supp. 3d 878, 889 (N.D. Ohio 2017) (unforeseen intervening criminal act breaks causation), *aff'd*, 791 F. App'x 547 (6th Cir. 2019); *Blackmon v. Tri-Arc Food Sys.*, 782 S.E.2d 741, 745 (N.C. App. Ct. 2016) (same); *Bower v. Harrah's Laughlin*, 125 Nev. 470, 492 (Nev. 2009) (same); *Or. Steel Mills*, 83 P.2d at 330 (same); *Mico Mobile Sales & Leasing v. Skyline*, 546 P.2d 54, 57–58 (Idaho 1975) (same); *cf. Jane Doe No. 1 v. Uber Techs.*, 79 Cal. App. 5th 410, 419 (2022) ("[T]here is no duty to act to protect others from the conduct of third parties" under California law.).

[13]     *See also Paradise Ent. Grp. v. Favors*, 871 S.E.2d 916, 922 (Ga. Ct. App. 2022) (same); *Franke v. Clinton William Holland Revocable Tr.*, 633 S.W.3d 772, 782 (Ark. Ct. App. 2021) (same); *Posecai v. Wal-Mart Stores.*, 752 So. 2d 762, 766

As already discussed in Part II.A.ii.(1), Plaintiffs do not establish that the Ransom Event was sufficiently foreseeable to Horizon to create such a duty.

Second, Plaintiffs fail to establish the requisite "causal link" between the Ransom Event and any alleged identity theft. *Saelzler v. Advanced Grp. 400*, 23 P.3d 1143, 1150 (Cal. 2001). Plaintiffs must sufficiently allege that Horizon's conduct was the "actual and proximate cause" of their alleged injuries. *Alves v. United States,* No. 19-0044, 2022 WL 2105976, at *5 (D. Idaho June 10, 2022).[14] The link cannot be "remote and speculative." *In re Exxon Valdez*, 270 F.3d 1215, 1253 (9th Cir. 2001).[15]

Courts require more in data cases because personal "[i]nformation is [already] widely available." *Greenstein*, 2022 WL 472183, at *7. One alleged fraud victim admitted that multiple sources could have disclosed her social security number:

> Absolutely no idea . . . you're asked for your [SSN] under many circumstances—every time you go to the doctor or anything else, everybody asks you for your [SSN], so I guess it could be just about

---

(La. 1999) (same).

[14]   This is blackletter law across jurisdictions. *See, e.g.*, *Saelzler*, 23 P.3d at 1150 (California law); *Riggins*, 589 S.E.2d at 694 (Georgia law); *Mann v. Producer's Chem. Co.*, 827 N.E.2d 883, 888 (Ill. App. Ct. 2005); *Buchler*, 853 P.2d at 803 n.6.

[15]   *See also Fell v. Fat Smitty's,* 467 P.3d 398, 402 (Idaho 2020) (same); *Thomas v. Sharon*, 427 S.W.3d 756, 761 (Ark. Ct. App. 2013) (proof of causation "must be more than speculation or conjecture"); *Mengelson v. Ingalls Health Ventures*, 751 N.E.2d 91, 96 (Ill. Ct. App. 2001) (proximate cause not established where causal connection is "contingent, speculative or merely possible.").

anywhere.

Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) (quoted CCAC ¶ 86). Accordingly, plaintiffs in the Eleventh Circuit must allege facts establishing a "nexus" between their injuries and the data event "beyond allegations of time and sequence." *Resnick v. AvMed,* 693 F.3d 1317, 1326 (11th Cir. 2012).

In *Allgood v. PaperlessPay Corp.*, No. 20-0516, 2022 WL 846070 (M.D. Fla. Mar. 22, 2022), an unauthorized individual entered the defendant's server for a "finite amount of time," exfiltrated SSNs, and then sold access to defendant's server on the dark web. *Id.* at *3, 10. The plaintiffs sued, alleging that their SSNs were used to commit identity fraud more than six months later. *Id.* The court held these allegations insufficient "to infer" that information used by the identity thief was stolen from the defendant. *Id.* at *10. Plaintiffs failed to allege they had "never been victims of identity theft" before the incident or that their PII had not been previously exposed. *Id.* at *10. The mere fact that defendant maintained the type of PII later misused was "not enough to plausibly plead causation" absent additional facts creating a "logical connection" between the incidents. *Id.* (citing *Resnick*).

Plaintiffs' allegations of causation are thinner here. Following an investigation into the Ransom Event, Horizon determined that the Ransom Group

may have accessed Participant information for a "limited period" in November 2021. Decl. Ex. A at 3. Horizon did not, however, determine that the Ransom Group did actually access or exfiltrate Participant data. *See* Decl. Exs. A, C. Plaintiffs have made no plausible allegation that Horizon's data was published to the dark web. *See* CCAC ¶¶ 129, 154. Plaintiffs fail to allege that they have never been the victims of identity theft or that their PII was not already exposed in one of the many "recent high profile data breaches" alleged. *Id.* ¶ 48.

In short, Plaintiffs allege no facts beyond time and sequence tying the Ransom Event to their allege injuries; indeed, they often do not even plead timing. *See* CCAC ¶¶ 115, 146, 153 (failing to allege when fraud occurred); *supra* Part I.B. And, in the few instances where time and sequence are alleged, the injury occurred more than six months after the Ransom Event. *See* CCAC ¶ 126 (alleging July 2022 unauthorized access to credit card account); *id.* ¶ 164 (alleging June 2022 "attempt" to open bank account). Without more alleged facts suggesting a connection between the incidents, no causal link can be inferred. *See Allgood*, 2022 WL 846070, at *10; *Almon v. Conduent Bus. Servs., LLC*, No. 19-0746, 2019 WL 13207564, at *9 (N.D. Ga. Aug. 9, 2019) (dismissing claim); *Galaria v. Nationwide Mut. Ins. Co.*, No. 13-0118, 2017 WL 4987663, at *6 (S.D. Ohio Aug. 16, 2017) (same). "A possible claim is not the same thing as a plausible claim," and Plaintiffs' allegations "stop short of

the line between possibility and plausibility." *Allgood*, 2022 WL 846070, at *3
(quoting *Twombly*, 550 U.S. at 557); *cf.* O.C.G.A. § 51-12-8.

### (4)   Plaintiffs Fail to Allege Any Cognizable Injuries

Plaintiffs identify a litany of purported "actual injuries" in support of their
claims, which can be categorized as: (a) the risk of future identity theft; (b) lost time
and money in mitigation; (c) attempted identity theft; (d) diminution in the value of
PII; (e) loss of privacy in and control of PII; and (f) anxiety. CCAC ¶¶ 221–222.
None qualify as cognizable or actual injuries sufficient to support a claim.

### (a)   Risk of Future Injury Is Not a Cognizable Injury

"[A]ppreciable, nonspeculative, present harm is an essential element of a
negligence cause of action"; a "breach of duty causing only speculative harm or the
threat of future harm" does not suffice. *In re Sony Gaming Networks & Customer
Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962–63 (S.D. Cal. 2012).[16] "[T]he

---

[16]    Courts across jurisdictions agree. *See Worix v. MedAssets*, 857 F. Supp. 2d
699, 703 (N.D. Ill. 2012); *Parker v. Brush Wellman.*, 377 F. Supp. 2d 1290, 1296
(N.D. Ga. 2005), *aff'd sub nom. Parker v. Wellman*, 230 F. App'x 878 (11th Cir.
2007); *Mansfield v. United States*, No. 18-0278, 2019 WL 6868965, at *4 (D. Idaho
Dec. 16, 2019); *Brit Ins. Holdings N.V. v. Krantz*, No. 11-948, 2012 WL 28342, at
*7–9 (N.D. Ohio Jan. 5, 2012); *Bradix v. Advance Stores*, 226 So. 3d 523, 529 (La.
Ct. App. 2017); *Paul v. Providence Health Sys.-Or.*, 273 P.3d 106, 110 (Or. 2012);
*Blackwell v. Hatley*, 688 S.E.2d 742, 746 (N.C. Ct. App. 2010) ("certain actual injury
or loss" is an "essential element" of negligence); *Clark Cnty. Sch. Dist. v.
Richardson Const*, 123 Nev. 382, 397 (2007); *Di Donato v. Wortman*, 358 S.E.2d
489, 493 (N.C. 1987).

mere danger of future harm, unaccompanied by present damage, will not support a negligence action" following a data event. *Id.* at 963 (quoting *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 130 (9th Cir. 2010)).[17]

### (b)   Mitigation Efforts Are Not a Cognizable Injury

"The majority view is that 'general allegations of lost time' . . . are not cognizable injuries" for purposes of a negligence claim. *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021) (collecting cases); *Pruchnicki,* 845 F. App'x at 615. Nor is the cost of "additional credit monitoring services," unless "reasonable and necessary." *Gardiner v. Walmart*, No. 20-4618, 2021 WL 4992539, at *4 (N.D. Cal. July 28, 2021).[18] Here, mitigation costs—alleged only by Ackman, Ruiz, and Dodd, CCAC ¶¶ 130, 140, 147—were neither reasonable nor necessary.

---

[17]    *See also, e.g.*, *Pruchnicki*, 845 F. App'x at 615 (affirming dismissal); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007); *Corona v. Sony Pictures*, No. 14-9600, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015); *Moyer v. Michaels Stores*, No. 14-561, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014); *Belle Chasse*, 2009 WL 799760, at *3; *Melancon v. La. Off. of Student Fin. Assistance*, 567 F. Supp. 2d 873, 877 (E.D. La. 2008) ("possibility" information is at an increased risk "does not constitute actual injury").

[18]    Again, courts agree. *See, e.g.*, *Griffey*, 562 F. Supp. 3d at 44 (dismissing claims); *Holly v. Alta Newport Hosp., Inc.*, No. 19-7496, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020) (same); *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 709–11 (S.D. Ohio 2007) (same); *Pisciotta*, 499 F.3d at 637–39; *Worix*, 857 F. Supp. 2d at 704; *Greenstein*, 2022 WL 472183, at *5; *Antman*, 2015 WL 6123054, at *11; *cf. Al-Kindi v. Edwards Bros.*, No. 03-0459, 2005 WL 2265914, at *13 (D. Idaho Sept. 16, 2005).

Plaintiffs did not face a substantial risk of identity theft following the ***possible*** exposure of their data, *see supra* Part I.A.i.(2), and in any event, Horizon provided Plaintiffs free access to identity monitoring and related services and up to $1 million in fraud loss reimbursements, CCAC ¶ 65 & Decl. Ex. C at 2.

### (c)   Attempted Identity Theft Is Not a Cognizable Injury

Ruiz, Dodd, and Evans aver their information was used to make credit inquiries, open an account, and file a tax return. CCAC ¶¶ 141, 146, 164. Mere identity theft, however, cannot support a claim unless and until "actual damages" result, as the potential for future resulting loss "is speculative" at best. *Griffey*, 562 F. Supp. 3d at 46.[19] No Plaintiff claims any unreimbursed out-of-pocket losses, and if they had, Horizon has already made available up to $1 million in fraud loss reimbursement services. CCAC ¶ 65 & Decl. Ex. C at 2.

---

[19]     *See also Kuhns*, 868 F.3d at 718 ("Massive class action litigation should be based on more than allegations of worry and inconvenience."); *In re SuperValu*, 925 F.3d at 964 (no claim where never required to pay fraudulent charge); *Whalen*, 689 F. App'x at 90 (same); *In re Sony*, 903 F. Supp. 2d at 962 (same); *Krottner*, 406 F. App'x at 131 (no claim where "no loss related to the attempt to open a bank account" alleged); *Savidge v. Pharm-Save*, No. 17-0186, 2017 WL 5986972, at *4 (W.D. Ky. Dec. 1, 2017) (no claim where "fraudulent tax return" did not "cause [plaintiff] cognizable loss"); *Holmes v. Countrywide Fin.*, No. 08-0205, 2012 WL 2873892, at *8 (W.D. Ky. July 12, 2012) (no claim where "attempt to secure an automobile loan was unsuccessful").

### (d) Diminution of Value Must Be Personally Experienced

PII has no "intrinsic value" to its owners. Even if it did, Plaintiffs allege no facts indicating their lost PII value. *In re Cmty. Health*, 2016 WL 4732630, at \*8–9; *Pruchnicki*, 845 F. App'x at 615; *see supra* Part I.A.iii. With no allegations that they have "been unable to sell, profit from, or monetize [their] personal information," Plaintiffs have no claim. *Gardiner*, 2021 WL 4992539, at \*3.[20]

### (e) Loss of Privacy and Control Are Not Compensable

"[T]he 'mere misappropriation of personal information' does not establish compensable damages." *Pruchnicki*, 845 F. App'x at 615 (citation omitted).[21] This is particularly true where a hacker "demanded a ransom payment . . . in exchange [for] return [of] the data," as data may not even have been viewed. *See Patterson*, 2022 WL 2267673, at \*3. Regardless, Plaintiffs fail to allege any actual damages resulting from such abstract harms. *See, e.g.*, CCAC ¶¶ 221–222.

---

[20]     *See also Provost*, 2018 WL 1465766, at \*4 (Ross, J.) ("Hypothetical diminution of value" will not support a claim.); *Patterson v. Med. Rev. Inst. of Am.*, No. 22-0413, 2022 WL 2267673, at \*3 (N.D. Cal. June 23, 2022) (same); *Griffey*, 562 F. Supp. 3d at 46 (same); *Razuki v. Caliber Home Loans*, No. 17-1718, 2018 WL 6018361, at \*1 (S.D. Cal. Nov. 15, 2018) (same).

[21]     *Accord Med-Data*, 2022 WL 970862, at \*10; *In re Practicefirst*, 2022 WL 354544, at \*8; *Amburgy*, 671 F. Supp. 2d at 1055.

### (f)   Anxiety and Anger Are Not Cognizable Injuries

"[A] recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Ryckeley v. Callaway*, 412 S.E.2d 826, 826 (Ga. 1992).[22] Thus, a plaintiff may not recover for alleged emotional distress "premised entirely on the ***risk*** of future identity theft." *Paul*, 273 P.3d at 109. Plaintiffs allege no physical injury (or even emotional distress), and conclusory allegations of worry and frustration are insufficient. *See, e.g.*, *Wong*, 189 Cal. App. 4th at 1377–78.

### (5)   The Economic Loss Doctrine Bars Plaintiffs' Recovery

"[A] plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property." *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 78 (2005); *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1303–04 (N.D. Ga.) (recognizing rule applies to all negligence-based tort claims).[23] If there is "no

---

[22]   This is blackletter law. *See Parker*, 230 F. App'x at 882; *Pruchnicki*, 845 F. App'x at 614 (Nevada law); *Leonard v. Walthall*, 143 F.3d 466, 468 (8th Cir. 1998) (Arkansas law); *Ashby v. Mortimer*, No. 18-0143, 2020 WL 572718, at *12 (D. Idaho Feb. 5, 2020); *Belle Chasse*, 2009 WL 799760, at *4 (Louisiana law); *Paul*, 273 P.3d at 109 (Oregon law); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (2010).

[23]   Relevant states recognize this rule. *See, e.g.*, *Hanover Ins. Co. v. Carroll*, No. 13-1802, 2014 WL 5472520, at *4 (N.D. Ga. Mar. 5, 2014); *Paul*, 273 P.3d at 110 (Oregon law); *Lord v. Customized Consulting Specialty*, 643 S.E.2d 28, 30 (N.C. 2007); *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 777–85 (1997); *In re Chi. Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997).

physical damage, and the only loss is a pecuniary one . . . courts have adhered to the rule that purely economic interests are not entitled to protection against mere negligence." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 946 (11th Cir. 1982). Plaintiffs do not seek to recover for physical injury or property damage, so their negligence claim should be dismissed. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011) (noting "other courts dealing with data breach cases" have held tort claims are barred absent personal injury or property damage).[24]

### iii.   Plaintiffs' Unjust Enrichment Claim Fails (Count III)

Unjust enrichment applies if a "benefit" has been conferred that "would result in an unjust enrichment unless compensated." *Smith Serv. Oil, Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001). Thus, to state a claim, Plaintiffs must allege: (a) a benefit conferred; (b) without compensation; and (c) failure to compensate would be unjust. *Hill v. Clark*, No. 11-0057, 2012 WL 787398, at *6 (N.D. Ga. Mar.

---

[24]   *See also Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794–95 (W.D. Wis. 2019) (in data breach case, tort claims barred by Illinois economic loss doctrine); *Schnuck*, 887 F.3d at 817 (same); *Perdue*, 455 F. Supp. 3d at 761 (same); *Gardiner*, 2021 WL 4992539, at *6 (same); *Dugas*, 2016 WL 6523428, at *12 (same); *In re Sony*, 996 F. Supp. 2d at 961–62 (mitigation costs, lost use, and lost value barred).

7, 2012).[25] The CCAC fails to allege all elements of its unjust enrichment claim.[26]

First, Plaintiffs fail to adequately allege that they—not someone else—provided a benefit to Horizon. While Plaintiffs broadly allege that Horizon "collected" their PII, CCAC ¶ 242, they acknowledge that the Plans, not Plaintiffs, gave this information to Horizon for the Plan's "business and compliance purposes." *See id.* ¶¶ 27–28. This fact is fatal. *See Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1335 (N.D. Ga. 2017) (dismissing claim where "Plaintiff fails to allege that any portion of the transaction fees came from her").[27]

Second, Plaintiffs do not allege that the Plans paid for data protection or that Horizon failed to render the actuarial and consulting services for which the Plans

---

[25]   The elements of unjust enrichment are similar across jurisdictions. *See, e.g.*, *Peregrine Falcon LLC v. Piaggio Am., Inc.*, 446 F. Supp. 3d 654, 669 (D. Idaho 2020); *Franklin v. CitiMortgage, Inc.*, No. 11-608, 2012 WL 10192, at *7 (S.D. Ohio Jan. 3, 2012); *Trickett v. Spann*, 613 S.W.3d 773, 777 (Ark. Ct. App. 2020); *Wilson v. Gutierrez*, 323 P.3d 974, 978 (Or. Ct. App. 2014); *Shelter Corp. v. Btu, Inc.*, 572 S.E.2d 200, 206–07 (N.C. Ct. App. 2002); *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997).

[26]   Indeed, neither California nor Illinois recognize an independent claim for unjust enrichment. *See In re Sony*, 903 F. Supp. 2d at 973–74; *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). Count III must therefore be dismissed as to Torrano, Ruiz, Thomas, Chavez, Moody, and Ackman.

[27]   *See also Gibson v. Credit Suisse AG*, No. 10-0001, 2012 WL 529702, at *19 (D. Idaho Feb. 17, 2012) (same), *recommendation adopted on relevant grounds*, 2012 WL 1253007 (D. Idaho Mar. 30, 2012); *cf. Krawiec v. Manly*, 811 S.E.2d 542, 552 (N.C. 2018) (dismissing unjust enrichment claim where plaintiffs conferred no benefit); *In re Zappos.com*, 2016 WL 2637810, at *7 (same in data action).

hired Horizon. Courts consistently hold that, after a data event, an unjust enrichment claim fails absent allegations that an alleged benefit was given ***in exchange for*** data protection.[28] Plaintiffs' offer no allegation that anyone "pa[id] for a side order of data security and protection," so their claim fails. *Irwin*, 175 F. Supp. 3d at 1072; *Gordon*, 344 F. Supp. 3d at 1246 ("Plaintiffs paid for burritos; Plaintiffs received burritos.").

Finally, there is no allegation that retention of any benefit would be unjust. This claim must rely on "some operative act, intent, or situation to make the enrichment unjust and compensable." *Trickett*, 613 S.W.3d at 777.[29] No such allegation is plausibly alleged, and Count III thus fails.

### iv. Plaintiffs' Invasion of Privacy Claim Also Fails (Count V)

The only potentially-applicable invasion of privacy claim following a data event is "public disclosure of embarrassing facts," which requires: (a) "public disclosure"; of (b) "private, secluded or secret facts"; that (c) "must be offensive and

---

[28]   *See, e.g.*, *In re SuperValu*, 925 F.3d at 966; *Perdue*, 455 F. Supp. 3d at 766; *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016); *Gordon*, 344 F. Supp. 3d at 1246; *Toretto v. Donnelley Fin. Sols.*, No. 20-2667, 2022 WL 348412, at *14 (S.D.N.Y. Feb. 4, 2022); *cf. Kamdem-Ouaffo v. Idahoan Foods, LLC*, 243 F. Supp. 3d 1130, 1137 (D. Idaho 2017) (dismissing unjust enrichment claim where "Plaintiff has not demonstrated that he performed services that were not compensated"), *aff'd*, 789 F. App'x 75 (9th Cir. 2020).

[29]   *See also, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1076 (N.D. Cal. 2012) (no grounds for restitution absent "fraud, duress, conversion, or similar conduct").

objectionable to a reasonable man of ordinary sensibilities under the circumstances." *McConnell*, 828 S.E.2d at 359.[30] Plaintiffs fail to allege these elements.

First, Plaintiffs do not allege that Horizon "disclosed plaintiff's personal information to the public." *White*, 2018 WL 5013571, at *3. The disclosure must be "to the public generally or to a large number of persons." *FCM v. Wash. Mut. Bank*, No. 07–1298, 2007 WL 4565237, at *5 (D. Or. Dec 21, 2007). Here, Plaintiffs allege the limited, unauthorized, and uncertain access of unknown data by a single actor— namely, the Ransom Group. CCAC ¶ 29. This does not qualify as disclosure to the "public at large." *In re Dunbar*, 446 B.R. 306, 315 (Bankr. E.D. Ark. 2011) (quoting Restatement (Second) of Torts § 652D cmt. a); *see also Beverly v. Reinert*, 606 N.E.2d 621, 626 (Ill. App. Ct. 1992). "[W]ithout publicity, there is no invasion of privacy." *Hunstein*, 2022 WL 4102824, at *6, *8.

Second, names, birth dates, and SSNs are "matters of public record," not "private information." *Cooney*, 943 N.E.2d at 32. This is not information that "affect[s] a person's reputation, which is the interest the tort of public disclosure . . .

---

[30]    The elements of a public disclosure claim are similar across jurisdictions. *See, e.g.*, *Simpson v. Burrows*, 90 F. Supp. 2d 1108, 1125 (D. Or. 2000); *Cooney*, 943 N.E.2d at 32; *Green-Hamilton v. DECA Health, Inc.*, No. 17-2534, 2018 WL 3842169, at *3 (N.D. Ohio Aug. 13, 2018); *McMullen v. McHughes L. Firm*, 454 S.W.3d 200, 209 (Ark. 2015); *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009).

was meant to remedy." *McConnell*, 828 S.E.2d at 360. The disclosure of even "highly personal information, such as social security numbers," does not support an invasion of privacy claim. *Hayden v. The Retail Equation*, No. 20-1203, 2022 WL 2254461, at *7 (C.D. Cal. May 4, 2022).

Third, no disclosure was objectively "offensive." A plaintiff must allege a "serious invasion" constituting "an egregious breach of the social norms underlying the privacy right." *S.F. Apartment Ass'n v. City & Cty. of S.F.*, 881 F.3d 1169, 1178 (9th Cir. 2018) (citation omitted).[31] Courts regularly find exposure of PII insufficiently "objectionable and offensive" to support a claim. *McConnell*, 828 S.E.2d at 360.[32] Plaintiffs allege no invasion of privacy, let alone at serious one.

### B. Plaintiffs Fail to State Claims under the Various Consumer Protection or Trade Practice Laws Invoked

Plaintiffs each assert claims under their state's consumer protection and/or trade practices laws. These include: (a) a data breach claim under the CCPA, Cal. Civ. Code § 1798.150 (Count VII); (b) claims under the California Customer Records Act ("**CRA**"), Cal. Civ. Code § 1798.80 *et seq.*, and (c) Louisiana Database

---

[31]     *Accord Beverly*, 606 N.E.2d at 624; *McMullen*, 454 S.W.3d at 209; *Bradix*, 226 So. 3d at 530.

[32]     *See also, e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020); *Fisher v. Comm'ns Workers of Am.*, No. 08-0018, 2008 WL 4754850, at *7 (N.C. Super. Ct. 2008) (disclosure of SSNs not highly offensive).

Security Breach Notification Law ("**DSBNL**"), La. Rev. Stat. Ann. § 51:3074 (Counts VIII, XII); and (d) substantially similar claims under the deceptive and/or unfair trade practices statutes of Arkansas, California, Idaho, Illinois, Louisiana, Nevada, North Carolina, and Oregon.[33] These claims also fail.

### i.   State Statutes Lack Extraterritorial Effect

These "statutes have no effect except within the state's own territorial limits." *Hetman v. Schwade*, 317 S.W.3d 559, 564 (Ark. 2009). A plaintiff's residency does not change this presumption. *Perdue*, 455 F. Supp. at 773–74 (collecting cases). Rather, to enforce a state's consumer protection statute, a plaintiff must show that the "circumstances that relate to the disputed transaction occur[ed] primarily and substantially in" that state. *Int'l Equip. Trading v. Illumina, Inc.*, 312 F. Supp. 3d 725, 733 (N.D. Ill. 2018) (citation omitted); *accord Thunder Studios v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021). Where "the liability-creating conduct occurs outside

---

[33]     Namely, the Arkansas Deceptive Trade Practices Act ("**ADTPA**"), A.C.A. § 4-88-101 *et seq.* (Count VI); California Unfair Competition Law ("**UCL**"), Cal. Bus. & Prof. Code § 17200 (Count IX); Idaho Consumer Protection Act ("**ICPA**"), Idaho Code §§ 48-603, 48-603C (Count X); Illinois Consumer Fraud Act ("**ICFA**"), 815 Ill. Comp. Stat. § 505/1 *et seq.* (Count XI); Louisiana Unfair Trade Practices and Consumer Protection Law ("**LCPA**"), La. Rev. Stat. Ann. § 51:1401 *et seq.* (Count XIII); Nevada Deceptive Trade Practices Act ("**NDTPA**"), Nev. Rev. Stat. § 598.0903 *et seq.* (Count XIV); North Carolina Unfair Trade Practices Act ("**NCUTPA**"), N.C.G.S.A. § 75-1.1 *et seq.* (Count XV); and Oregon Unfair Trade Practices Act ("**OUTPA**"), Or. Rev. Stat. § 646.608 *et seq.* (Count XVI).

[a state], [that state's] law generally should not govern." *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018).[34]

Plaintiffs' state statutory claims are each subject to this presumption against extraterritoriality.[35] The CCAC, however, identifies Georgia as the sole location of relevant conduct. CCAC ¶¶ 180–182 (identifying Georgia as Horizon's "nerve center" where "its data security functions and major policy, financial, and legal decisions" were made). Plaintiffs nowhere allege that they sustained injuries elsewhere. Therefore, the "presumption against applying statutes extraterritorially" requires dismissal of all claims under non-Georgia statutes. *Rimini*, 473 F. Supp. 3d at 1226; *Toretto*, 2022 WL 348412, at *20 (finding UCL did not apply extraterritorially in data action).

## ii.   The California Plaintiffs' CCPA Claim Fails (Count VII)

The CCPA provides a limited private right of action where a "consumer"

---

[34]     *See also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005); *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1226 (D. Nev. 2020) (holding plaintiff "cannot maintain a cause of action under the NDTPA when the challenged conduct occurred outside of Nevada").

[35]     *See Rimini*, 473 F. Supp. 3d at 1226 (Nevada law); *Hetman*, 317 S.W.3d at 564 (Arkansas law); *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011); *Phillips v. Consol. Supply Co.*, 895 P.2d 574, 577 (Idaho 1995); *Avery*, 835 N.E.2d at 852 (Illinois law); *Mendonca v. Tidewater Inc.*, 862 So. 2d 505, 509 (La. Ct. App. 2003); *McCullough v. Scott*, 109 S.E. 789, 796 (N.C. 1921); *Swift & Co. v. Peterson*, 233 P.2d 216, 228 (Or. 1951).

plausibly alleges that her personal information was "[(a)] subject to an unauthorized access and exfiltration, theft, or disclosure as a result of [(b)] the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." Cal. Civ. Code § 1798.150(a)(1). The CCAC does not come close to meeting these elements.

First, Plaintiffs allege no facts indicating any PII—let alone their PII—was "access[ed]" *and* subject to "exfiltration, theft, or disclosure" by the Ransom Group. The most Plaintiffs can allege is that their PII *may* have been impacted when Horizon's servers were accessed. *See* Decl. Exs. A, C. Plaintiffs' conclusory allegations to the contrary, *see* CCAC ¶¶ 291–292, are speculative and do not meet *Twombly*'s minimum pleading requirements. 550 U.S. at 555.

Second, Plaintiffs allege no fact indicating Horizon failed to maintain "*reasonable* security procedures." The CCPA does not hold an entity strictly liable for every unauthorized access, and an allegation of "a breach" is insufficient to plausibly allege a defendant's "data security was inadequate." *Griffey*, 562 F. Supp. 3d at 57 (dismissing claim); *Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-0031, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (same). The FTC "guidelines" on which Plaintiffs rely acknowledge that "breaches can happen" even where proper "[s]teps are taken." FTC, *Protecting Personal Information: A Guide for Business* (2016);

CCAC ¶ 68. Plaintiffs' allegations that Horizon failed to comply with "best cybersecurity practices," CCAC ¶¶ 75–76, are the same "conclusory," boilerplate allegations that another court found "insufficient to survive [a] motion to dismiss." *Griffey*, 562 F. Supp. 3d at 57 (dismissing similar allegations brought by Interim Co-Lead Counsel); *see also Twombly*, 550 U.S. at 555.

Finally, Plaintiffs' "statutory damages" claim is barred. CCAC ¶ 299. Under the CCPA, "no action for individual statutory damages or class-wide statutory damages may be initiated" if, within 30 days of notice, a business "provides the consumer an express written statement that the violations have been cured and that no further violations shall occur." § 1798.150(b). Horizon sent written statements that "timely responded" to the CCPA notices." CCAC ¶ 297.[36] The statements said that the Ransom Group agreed to "delete and not distribute or otherwise misuse" data it may have accessed. CCAC ¶ 297 & Decl. Exs. D–F. They said that Horizon "has taken additional measures to cure the reported incident and has implemented additional measures to secure its servers and prevent any such incident, or any CCPA violation, from occurring in the future." *Id.* Those statements bar Plaintiffs claim for statutory damages. § 1798.150(b).

---

[36]   Copies of these letters, which are incorporated by the pleading, CCAC ¶ 297, are attached as Ex. D through Ex. F to the Decl.

### iii. California and Louisiana Plaintiffs Cannot Assert a Breach of Their States' Notification Statutes (Counts VIII, XII)

The California CRA and Louisiana DSBNL require covered businesses to "notify the owner or licensee of [] information" of a data breach "if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b); La. R.S. 51:3074(D).[37] The notification "shall be made in the most expedient time possible and without unreasonable delay" after taking "any measures necessary to determine the scope of the breach." Cal. Civ. Code § 1798.82(b); La. R.S. 51:3074(E). If either statute is violated, a private litigant may seek "actual damages resulting from the failure to disclose in a timely manner." La. R.S. 51:3074; *accord* Cal. Civ. Code § 1798.84(b).

Plaintiffs allege that Horizon violated these provisions "by failing to disclose the [Ransom Event] immediately following its discovery." CCAC ¶ 308; *see also id.* ¶ 349.[38] That is not supported by their own allegations and documents referenced in the CCAC. Horizon notified the Plans within days of determining that potentially

---

[37] Plaintiffs incorrectly cite Subsection 51:3074(C), which applies to a person that "owns or licenses computerized data." CCAC ¶ 345. Horizon was provided data for its client's business purposes; it does not own or license the data. *Id.* ¶¶ 26–28.

[38] Plaintiffs do not allege that the Ransom Event violated the CRA's "reasonable security" provision, Cal Civ. Code § 1798.81.5(b). *See* CCAC ¶¶ 300–310. Had they, such an allegation would fail for the same reasons the California Plaintiffs' CCPA claim fails. *See supra* Part II.B.ii.

sensitive information may have been impacted. *See* Decl. Ex. C at 1 (determination made January 9, 2022; notice sent to Plans beginning January 12, 2022). And, though not required, Horizon mailed Notice Letters to potentially impacted individuals once it received authorization to do so from the Plans. CCAC ¶ 37 & Decl. Ex. A at 3. The notifications described the Ransom Event, the information potentially involved, the actions taken by Horizon, actions that potentially impacted individuals could take, and resources for additional information. *See* Decl. Exs. A, C. The CRA and DSBNL require no more. La. R.S. 51:3074(E); Cal Civ. Code § 1798.82(b), (d)(1); *see also Razuki*, 2018 WL 6018361, at *2 (notice within five months reasonable under CRA).

Merits aside, Plaintiffs do not allege "actual damages flowing from the unreasonable delay (and not just the intrusion itself)." *In re Sony*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014); *see also Razuki*, 2018 WL 6018361, at *2 (CRA requires showing "delay in notification led to incremental harm"); *Belle Chasse*, 2009 WL 799760, at *3 (DSBNL does not provide remedy for "any and all negligent handling" of PII). Plaintiffs do not plausibly allege that timelier notice would have prevented any actual injury. Indeed, Plaintiffs fail to allege any "cognizable damages," *see supra* Part II.A.ii.(4), which alone is fatal. *Pinero*, 594 F. Supp. 2d at 717.[39]

---

[39]     Plaintiffs' CRA claim also fails because they are not Horizon "customer[s]."

### iv.   Plaintiffs Fail to State Consumer Fraud or Unfair Trade Practices Claims (Counts VI, IX–XI, XII–XIV)

Plaintiffs assert similar claims under the unfair and deceptive trade practices statutes of eight states (Counts VI, IX–XI, XII–XIV). Under these statutes, Plaintiffs must allege that (a) Horizon engaged in a deceptive, unfair, or unlawful trade practice that (b) resulted in ascertainable loss to Plaintiffs.[40] Plaintiffs do not.

### (1)   Plaintiffs Fail to Allege a Deceptive Trade Practice

A plaintiff cannot maintain a deceptive trade practice action if she did "not receive, directly or indirectly, communication or advertising from the defendant." *De Bouse*, 922 N.E.2d at 316. And, any alleged misrepresentation must meet Rule 9(b)'s heightened pleading standard by stating the "who, what, when, where, and

---

Cal. Civ. Code §§ 1798.80(c), 1798.84(b) (limiting claim to those who provide information "for the purpose of purchasing" services). As Horizon obtained Plaintiffs' PII "while providing services to an[other] entity," Plaintiffs lack standing under the CRA. *Toretto*, 2022 WL 348412, at *18; *see also* CCAC ¶¶ 26–28.

[40]     *See* Cal. Bus. & Prof. Code §§ 17200, 17204 (UCL requirements); *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009) (ICFA requirements); *Tennier v. Wells Fargo Bank, N.A.*, 666 F. App'x 689, 691 (9th Cir. 2016) (NDTPA requirements); *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1139 (D. Or. 2014) (OUTPA requirements); *Wilson v. Blue Ridge Electric Membership Corp.*, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003) (NCUTPA requirements); *Bryntesen v. Camp Auto., Inc.*, No. 13-0491, 2015 WL 3616970, at *11 (D. Idaho June 9, 2015) (ICPA requirements); *Sussman v. Fin. Guards, LLC*, No. 15-2373, 2016 WL 9414345, at *5 (E.D. La. July 21, 2016) (LCPA requirements); *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005) (ADTPA requirements).

how of the fraud." *White*, 2018 WL 5013571, at *3.[41]

Plaintiffs' allegations fail. Plaintiffs identify no representation, advertisement, or other statement by Horizon directed at Plaintiffs (or otherwise). In fact, Plaintiffs concede Horizon would direct any statements to the Plans, not Participants. CCAC ¶¶ 26–28; *see also Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 411 (E.D. Pa. 2010) (ICPA does not apply to "conduct which, though generally deceptive, was not aimed at consumers, but rather was aimed at the PTO and other drug manufacturers"). Moreover, the only public-facing statement Plaintiffs do identify—Horizon's Privacy Policy—expressly warns that Horizon cannot "guarantee the security of Personal Information." Decl. Ex. B at 2. Plaintiffs' conclusory allegations to the contrary certainly do not satisfy Rule 9(b) or even the pleading requirements of *Twombly*. *See* 550 U.S. at 555; *Pinero*, 594 F. Supp. 2d at 721.[42]

---

[41]   *See also Pinero*, 594 F. Supp. 2d at 721 (dismissing LCPA claim); *Tuttle v. Treasure Valley Marine, Inc.*, No. 15-0314, 2016 WL 3198230, at *2 (D. Idaho June 8, 2016) (dismissing ICPA claim for failure to satisfy Rule 9(b) pleading standard).

[42]   Dodd's claim under the ADTPA also fails because she does not allege any "reliance on the use of a practice declared unlawful." Ark. Code Ann. § 4-88-113(f)(1)–(2). And, even if she had, she cannot assert her individual claim on behalf of the putative Arkansas subclass, as the ADTPA bars "private class action[s]." Ark. Code Ann. § 4-88-113(f)(1)(B).

### (2)   Plaintiffs Fail to Allege an Unfair Trade Practice

Plaintiffs allege no "unfair" trade practice by Horizon.[43] "Transactions that merely appear unfair, or in retrospect are bad bargains," are not actionable. *Douglas v. Am. Fin. Res., Inc.*, No. 16-0353, 2017 WL 2951635, at *4 (D. Idaho Mar. 20, 2017), *report and recommendation adopted*, 2017 WL 2256957 (D. Idaho May 23, 2017). Also, an unfair trade practice must be willful or unconscionable to be actionable—"mere negligence is not" sufficient. *Total Rebuild Inc. v. Streamline Hose & Fittings, Inc.*, No. 15-1172, 2015 WL 9237112, at *2 (W.D. La. Dec. 16, 2015).[44] Thus, without alleged "facts indicating egregious conduct," a data breach alone will not evidence an "unfair" practice. *Cmty. Bank of Trenton v. Schnuck*

---

[43]   The NDTPA prohibits "deceptive," but not "unfair" trade practices. *See* Nev. Rev. Stat. §§ 598.0915, 598.0923(3). And while the OUTPA does prohibit "unfair" conduct, ORST § 646.608(1)(u), such conduct is not actionable unless the "Attorney General has first established a rule . . . declaring the conduct to be unfair or deceptive in trade or commerce," *id.*, § 646.608(4). Plaintiffs identify no such rule.

[44]   *See also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169–70 (9th Cir. 2012) (conduct is actionable under the UCL only if it "offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"); *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1145 (D. Nev. 2019); *Innovative Manpower Sols., LLC v. Ironman Staffing, LLC*, 929 F. Supp. 2d 597, 610–11 (W.D. La. 2013); *Swafford v. Huntsman Springs, Inc.*, 409 P.3d 789, 793 (Idaho 2017) (violation of ICPA must be knowing); *State v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 435 (Idaho 2005) (absent fraud, plaintiff must allege defendant "exploit[ed] a particularly weakness" of the plaintiff or directed "unconscionable 'sales conduct'" at plaintiff); *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1141 (D. Or. 2014) ("[S]tatute requires that Defendant's alleged violation of the UTPA be 'willful.'").

*Markets, Inc.*, No. 15-1125, 2017 WL 1551330, at *7 (S.D. Ill. May 1, 2017), *aff'd*, 887 F.3d 803 (7th Cir. 2018) (dismissing ICFA claim). Plaintiffs simply allege no willful or unconscionable conduct by Horizon.

### (3)   Plaintiffs Fail to Allege an Unlawful Practice

Some states allow a plaintiff to assert a claim by "borrowing" the provisions of other statutes. *E.g.*, *Cel-Tech Commc'ns. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (discussing "unlawful" prong of UCL). But, "violation of a statute or regulation does not constitute a *per se* UDTPA violation unless the statute or regulation 'specifically designate[s] that a violation of the [statute or regulation] is also a violation of [the UDTPA]." *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 586 (E.D.N.C. 2020) (citation omitted).[45] And such "borrowing" cannot "engineer" a claim where one does not exist. *O'Donnell v. Bank of Am., Nat. Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) (affirming dismissal of UCL claim premised on statute lacking a private right of action).

Here, Plaintiffs attempt to "borrow" from the CCPA, CRA, DSBNL, FTC Act, and a slew of other statutes referenced only in passing. *E.g.*, CCAC ¶¶ 283, 316. First, Plaintiffs cannot "borrow" from those statutes because they cannot assert a

---

[45]   *See also, e.g.*, *Steinmetz v. Am. Honda Fin.*, 447 F. Supp. 3d 994, 1012–13 (D. Nev. 2020) (Nevada laws cited by Plaintiffs (CCPA ¶ 367(d)–(e)) "do not relate to the sale of goods and services" and therefore cannot sustain a NDTPA claim).

claim under the statutes. *See supra* Parts II.A.ii.(2), II.B.ii–iii.[46] Second, when borrowing a claim, the plaintiff "must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *Bros. v. Hewlett-Packard Co.*, No. 06-2254, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006); *accord Baba v. Hewlett-Packard Co.*, No. 09-5946, 2010 WL 2486353, at *6 (N.D. Cal. Jun. 16, 2010). Plaintiffs do not, relying instead on unspecified, conclusory allegation that Horizon "also violated" other statutes. CCAC ¶¶ 283(c), 316, 328, 340, 380, 391.[47]

### (4) Plaintiffs Fail to Allege Resultant Ascertainable Loss

"A private cause of action does not arise absent a showing of ***both*** a violation and resultant damages." *Parker v. Parker*, 520 S.W.3d 693, 699 (Ark. Ct. App. 2017); *see also Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912

---

[46]   "[T]o the extent that [a] Plaintiff rests his unlawful claim on claims that the Court has dismissed . . . , [it] must also be dismissed." *Gardiner*, 2021 WL 2520103, at *8; *accord Razuki*, 2018 WL 6018361, at *2.

[47]   Plaintiffs presumably take this approach because they cannot assert a claim under any of the laws cited. *See Park v. Wells Fargo Bank*, No. 12-2065, 2012 WL 3309694, at *4 (N.D. Cal. Aug. 13, 2012) (dismissing UCL claim premised on Gramm–Leach–Bliley Act, California Financial Information Privacy Act, and Article 1, § 1 of the California Constitution); *Fox*, 399 F. Supp. 3d at 801 (dismissing ICFA claim premised on 815 ILCS 530/1); N.C. Gen. Stat. Ann. § 75-65(i) (claim limited to those injured as a result of delayed notice); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1168 (D. Minn. 2014) (dismissing Arkansas and Idaho statutory claims for lack of private right of action); *Patton v. Experian Data Corp.*, No. 17-1559, 2018 WL 6190349, at *10 (C.D. Cal. Jan. 23, 2018) (same).

(N.D. Ill. 2012). "Pleading an ***ascertainable loss of money or property*** is an essential element" of a trade practices claim. *Gomez v. Bank of Am., N.A.*, No. 11-1253, 2012 WL 929790, at *9 (D. Or. Mar. 19, 2012) (emphasis added).[48] Also, a loss is only actionable if it was "caused by the unfair business practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–23 (2011).[49] Speculative, future damages do not meet this standard. *Gardiner*, 2021 WL 2520103, at *4.[50] Nor does theft of "personal information," which "does not constitute money or property." *In re iPhone*, 2011 WL 4403963, at *14.[51]

Plaintiffs have not alleged any cognizable injury resulting from the Ransom

---

[48]    *See also In re iPhone Application Litig.*, No. 11-2250, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (UCL claim requires plaintiff to have "lost money or property as a result of the unfair competition."); *Vickers v. Interstate Dodge, Inc.*, 882 So. 2d 1236, 1244 (La. Ct. App. 2004) (same under LCPA); *Archey v. Osmose Utils. Servs., Inc.*, No. 20-05247, 2021 WL 3367156, at *3 (N.D. Ill. Aug. 3, 2021) (ICFA requires "monetary damages").

[49]    *See also, e.g.*, *Razuki*, 2018 WL 6018361, at *3; *Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1050 (Or. Ct. App. 2000).

[50]    *See also Archey*, 2021 WL 3367156, at *4; *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005).

[51]    *See also, e.g.*, *Jackson v. Loews Hotels, Inc.*, No. 18-0827, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (holding "'theft' or 'unauthorized release of personal information' does not qualify as lost money or property for purposes of determining standing under the UCL"); *Dugas*, 2016 WL 6523428, at *11 (finding plaintiff "failed to establish that the loss of his PII constitutes a form of property that could qualify as property under the UCL"); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862–63 (N.D. Cal. 2011) (finding personal information is not "lost money or property" absent evidence the information ceased to belong to plaintiff).

Event, let alone the ascertainable "lost money or property" required to assert a claim.

*See supra* Part II.A.ii.(3)–(4). While a few Plaintiffs allegedly incurred redundant

mitigation expenses for credit monitoring services already offered by Horizon, *see*

CCAC ¶¶ 130, 140, 147, such self-imposed loss cannot support a trade practices

claim.[52] Absent allegations that the Ransom Event—as opposed to Plaintiffs' own

conduct—resulted in "lost money," Plaintiffs' trade practices claims fail.[53]

## C.    Plaintiffs Allege No Plausible Basis for Declaratory or Injunctive Relief

Plaintiffs seek a judgment declaring Horizon's "existing security measures do

---

[52]     *See, e.g.*, *Gardiner*, 2021 WL 2520103, at *7 (in granting motion to dismiss, finding "deprivation of value of PII"; "increased risk of identity theft"; and "out-of-pocket expenses and the value of time spent" insufficient to sustain plaintiff's negligence, breach of contract, and UCL claims); *In re Sony*, 903 F. Supp. 2d at 966 ("Plaintiffs' allegations that the heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury under the UCL . . . ."); *In re Google Android Consumer Privacy Litig.*, No. 11-2264, 2013 WL 1283236, at *4, *9 (N.D. Cal. Mar. 26, 2013); *Providence Health Sys.-Or.*, 240 P.3d 1110, 1120–21 (Or. App. Ct. 2010) (out-of-pocket costs incurred to prevent future losses following data event were not an "ascertainable loss" sufficient to support Oregon UTPA claim).

[53]     Bedont's ICPA claim also fails because no contractual relationship is alleged. An ICPA claim "must be based on a contractual relationship," *Doble v. Interstate Amusements, Inc.*, 372 P.3d 362, 364 (Idaho 2016), and the statute will only apply where the plaintiff "purchases or leases good or services and thereby suffers" injury, *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010). An indirect contractual relationship, which is the most Bedont alleges, is insufficient. *See Van Kirk v. Bank of Am. Corp.*, No. 11-0621, 2012 WL 3544735, at *1 (D. Idaho Aug. 15, 2012), *report and recommendation adopted*, 2012 WL 4524457 (D. Idaho Oct. 1, 2012).

not comply with its obligations" and providing "corresponding prospective injunctive relief." CCAC ¶¶ 258–259. Plaintiffs further allege that, absent such relief, they "will suffer irreparable injury . . . in the event of another data breach by Defendant." *Id.* ¶ 260. Such relief, however, is unavailable and unavailing.

First, the Declaratory Judgment Act creates only a remedy, not a cause of action. *See Musselman v. Blue Cross & Blue Shield of Ala.*, 684 F. App'x 824, 829 (11th Cir. 2017) (citing 28 U.S.C. § 2201). And like any remedy, declaratory and injunctive relief stand or fall with the "underlying cause of action." *Id.*; *accord Taylor v. Opteum Fin. Servs., LLC*, No. 18-3896, 2018 WL 6726056, at *7 (N.D. Ga. Oct. 25, 2018), *report and recommendation adopted*, 2018 WL 6725556 (N.D. Ga. Nov. 26, 2018) (Ross, J.). As Plaintiffs' predicate claims fail, so too does their claim for declaratory and injunctive relief.

Second, Plaintiffs do not lack an adequate remedy at law. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). Plaintiffs, however, acknowledge their injuries (if established) are reducible to costs associated with the "prevention, detection, and recovery from . . . unauthorized use of their PII." CCAC ¶ 221, Prayer for Relief ¶ D. As the consequences of identity

theft are compensable, injunctive relief is unavailable.[54]

Finally, "an injunction would serve no purpose." *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 217 (Ga. Ct. App. 2020). Conclusory allegations aside, there is no basis to infer the Ransom Event will recur. Upon learning of the Ransom Event, Horizon "immediately initiated efforts to secure its computer servers" and "has since implemented additional measures to further protect against similar incidents." Decl. Ex. A at 3; *see also Greenstein*, 2022 WL 472183, at *8 (injunctive relief unavailable where defendant "took immediate action" to secure data systems). And, if Plaintiffs' information has been compromised, "the Court cannot stop hackers from using [Plaintiffs'] information in the future." *Perdue*, 455 F. Supp. 3d at 773. The injury is already complete, and no "forward-looking" relief is possible. *TransUnion*, 141 S. Ct. at 2210; *see also In re SuperValu*, 925 F.3d at 965; *Fox*, 399 F. Supp. 3d at 800; *Dugas*, 2016 WL 6523428, at *8; *Collins*, 849 S.E.2d at 217.

---

[54]    This failure to allege a lack of legal remedy also bars the California Plaintiffs' UCL claim (Count IX). "Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages." *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. 11-1197, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012). Thus, to proceed under the UCL, a plaintiff must allege the requisite inadequacy of legal remedies. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). As "Plaintiff[s] have not demonstrated that the potential harm caused by [the Ransom Event] . . . could not be remedied by monetary damages," they cannot seek relief under the UCL. *Gardiner*, 2021 WL 2520103, at *7.

### D.     Plaintiffs' Claim for Attorneys' Fees Also Fails

As Plaintiffs' anchor claims fail, their derivative claim for attorney's fees under O.C.G.A. § 13-6-11 (Count XVII) must also fail. *PCI-U, LLC v. Fair Isaac Corp.*, No. 17-2650, 2019 WL 10837768, at *7 (N.D. Ga. Aug. 5, 2019) (Ross, J.).

### III.   The *Doe I* Action Must Also Be Dismissed

On August 19, 2022 (after the CCAC was filed), this Court consolidated these Actions with *Doe I v. Horizon Actuarial Services, LLC*, No. 22-2358, finding that they share "common questions" and consolidation "will avoid undue expense and delay." ECF No. 26 at 1–2. Rather than require an amended CCAC, this Court ordered that Horizon need "not . . . respond to the complaint filed in [] *Doe I* and need only to respond to the [CCAC]." *Id.* at 2. Given their overlap and consolidation, dismissal of the CCAC requires dismissal of *Doe I. See Bell v. Twp. of Maplewood*, No. 19-1298, 2021 WL 3260848, at *6, 14 (D.N.J. July 30, 2021) (dismissing consolidated actions on motion directed at one pre-consolidation complaint).

## <u>CONCLUSION</u>

Horizon respectfully requests that this Court grant its motion and dismiss these consolidated Actions (including *Doe I*) with prejudice.

Dated: September 12, 2022                Respectfully Submitted,

                                          **COZEN O'CONNOR**

                              By:    */s/ Alycen A. Moss*
                                          Alycen A. Moss
                                          Georgia Bar No. 002598
                                          1230 Peachtree St., NE
                                          The Promenade, Suite 400
                                          Atlanta, Georgia 30309
                                          Telephone: (404) 572-2052
                                          Fax: (877) 728-1396
                                          Email: amoss@cozen.com

                                          John J. Sullivan (*pro hac vice*)
                                          **COZEN O'CONNOR**
                                          3 WTC, 175 Greenwich St., 55th Fl.
                                          New York, NY 10007
                                          Telephone: (212) 453-3729
                                          Fax: (646) 461-2073
                                          Email: jsullivan@cozen.com

                                          Max E. Kaplan (*pro hac vice*)
                                          **COZEN O'CONNOR**
                                          One Liberty Place
                                          1650 Market Street, Suite 2800
                                          Philadelphia, PA 19103
                                          Telephone: (215) 665-4672
                                          Fax: (215) 701-2282
                                          Email: mkaplan@cozen.com

                                          *Attorneys for Defendant*
                                          *Horizon Actuarial Services, LLC*