## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JUSTIN SHERWOOD, on behalf of himself and all others similarly situated,

      Plaintiffs,

vs.

HORIZON ACTUARIAL SERVICES, LLC,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:22-CV-01495-ELR

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE AND SCHEDULING OF A FINAL APPROVAL HEARING

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iv

I.      INTRODUCTION ..................................................................................1

II.     SUMMARY OF THE LITIGATION ....................................................2

III.    SUMMARY OF SETTLEMENT ..........................................................4

        A.    The Settlement Class ..................................................................5

        B.    The Settlement Benefits ..............................................................5

              1.    Settlement Payments ........................................................5

              2.    California Claims ..............................................................6

              3.    Cash Payment ....................................................................7

              4.    *Cy Pres* Reserve ................................................................7

              5.    Release ..............................................................................7

        C.    The Notice and Claims Process ..................................................8

              1.    Notice ................................................................................8

              2.    Payment of Administrative and Notice Costs ..................9

              3.    Claims ................................................................................9

              4.    Requests for Exclusion and Objections ..........................9

              5.    Fees and Costs ................................................................11

IV.     LEGAL AUTHORITY ........................................................................12

V.      ARGUMENT........................................................................................13

        A.    Certification of the Settlement Class is Warranted ................13

              1.    The Proposed Settlement Class Meets the Requirements
                    of Rule 23(a) ..................................................................16

                    a.    The Class is so numerous that joinder of all members is
                          impracticable. ......................................................16

                    b.    Questions of law and fact common to the class ............17

                    c.    The claims and defenses of Plaintiffs are typical of the
                          claims and defenses of the class ..................................19

d.    Plaintiffs will fairly and adequately protect the interests of the class ....................................................................20

2.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ..........................................................21

a.    Common issues predominate over individualized ones in this matter ....................................................................21

b.    Class treatment is superior to individual litigation ........23

B.    Plaintiffs' Counsel should be Appointed Class Counsel ...................25

C.    The *Bennett* Factors Support Preliminary Approval: The Proposed Settlement is Fair, Reasonable, Adequate, and Free of Collusion ......26

1.    The proposed Settlement is the result of good faith negotiations, is not obviously deficient, and falls within the range of reason .......................................................27

2.    The *Bennett* factors support preliminary approval ..................27

a.    The benefits of settlement outweigh the risks at trial.....28

b.    The settlement is within the range of possible recoveries, and is fair, adequate, and reasonable ...........................30

c.    Continued litigation would be lengthy and expensive ...31

d.    There has not been any opposition to the Settlement.....31

e.    Plaintiffs had sufficient information to evaluate the merits and negotiate a fair, adequate and reasonable settlement...................................................................32

D.    The Proposed Notice Plan Should be Approved................................33

VI.    CONCLUSION ........................................................................................35

CERTIFICATE OF COMPLIANCE....................................................................37

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Agnone v. Camden County, Georgia*,
   No. 2:14-cv-24-LGW-BKE, 2019 WL 1368634 (S.D. Ga. Mar. 26, 2019)........34

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................ 14, 15, 22

*Anderson v. Garner*,
   22 F. Supp. 2d 1379 (N.D. Ga. 1997) .............................................16

*Barkwell v. Sprint Communications Company L.P.*,
   No. 4:09-CV-56 (CDL), 2014 WL 12704984 (M.D. Ga. Apr. 18, 2014) ..........35

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir 1984) .......................................................27

*Burrows v. Purchasing Power, LLC*,
   No. 1:12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ..............14, 30

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ......................................................22

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   258 F.R.D. 545 (N.D. Ga. July 20, 2007) ....................................passim

*Cooper v. Southern Co.*,
   390 F.3d 695 (11th Cir. 2004) ......................................................19

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ......................................................32

*Dickens v. GC Servs. Ltd. P'ship*,
   706 F. App'x 529 (11th Cir. 2017) ................................................24

*Fox v. Iowa Health Sys.*,
   No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ...........29

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)......29

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   No. 08 CV 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...29

*Hines v. Widnall*,
   334 F.3d 1253 (11th Cir. 2003) .....................................................19

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) .......................................17

*In re Brinker Data Incid*ent Litig.,
  No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021)*,
  vacated in part by Green-Cooper v. Brinker Int'l, In*c., 73 F.4th 883
  (11th Cir. 2023) ......................................................................................15
*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011) ..........................................................26
*In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig*.,
  No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ...........19, 23
*In re Domestic Air Transp*.,
  148 F.R.D. 297 (N.D. Ga. 1993)............................................................13
*In re Domestic Air,*
  141 F.R.D. 535 (N.D. Ga. 1992)............................................................33
*In re Equifax Inc. Customer Data Sec. Brea*ch Litig.,
  No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17*, 2020), aff'd in
  part, rev'*d in part, 999 F.3d 1247 (11th Cir. 2021)....................................passim
*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*.,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................16, 19, 23
*In re Motorsports Merchandise Antitrust Litig.,*
  112 F. Supp. 2d 1329 (N.D. Ga. 2000) .................................................13
*In re Target*,
  309 F.R.D. 482 (D. Minn. 2015)............................................................16
*In re the Home Depot, Inc., Cust. Data Sec. Breach Litig.*,
  2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .......................................17
*In re Tri-State Crematory Litig.*,
  215 F.R.D. 660 (N.D. Ga. Mar. 17, 2013)............................................20
*In re U.S. Oil & Gas Litig*.,
  967 F.2d 489 (11th Cir. 1992) ......................................................13, 31
*Klay v. Humana, Inc*.,
  382 F.3d 1241 (11th Cir. 2004) ............................................................22
*Lipuma v. American Express Co*.,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005)..............................14, 30, 31, 32
*Melanie K. v. Horton*,
  No. 1:14-cv-710-WSD, 2015 WL 1799808 (N.D. Ga. Apr. 15, 2015) ..............12
*Meyer v. Citizens and Southern Nat'l Bank*,
  677 F. Supp. 1196 (M.D. Ga. 1988)................................................13, 27
*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ..............................................................................33

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) .......................................................................23
*Sellers v. Rushmore Loan Mgmt. Servs., LLC*,
   949 F.3d 1031 (11th Cir. 2019) .......................................................................17
*Woodward v. NOR–AM Chem. Co.*,
   No. Civ-94-0870, 1996 WL 1063670 (S.D. Ala. May 23, 1996).......................31

Statutes

O.C.G.A. § 9-11-23(a)(1)...................................................................................16
O.C.G.A. § 13-6-11 ..............................................................................................3
O.C.G.A. § 9-11-23(b)(3) ..................................................................................14

Rules

Fed. R. Civ. P.23................................................................................14, 15, 34
Fed. R. Civ. P.23(a) ...........................................................................................16
Fed. R. Civ. P.23(a)(2).......................................................................................17
Fed. R. Civ. P.23(a)(3).......................................................................................19
Fed. R. Civ. P.23(a)(4).......................................................................................20
Fed. R. Civ. P.23(b)(3).......................................................................................14
Fed. R. Civ. P. 23(c)(2)(B).................................................................................33
Fed. R. Civ. P. 23(e) ....................................................................................12, 13
Fed. R. Civ. P. 23(g)(1)(A) ................................................................................25

Other Authorities

4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS
   § 13:10 (5th ed. 2015).......................................................................................12
*Manual for Complex Litigation.,* Sec. 21.632 (4th ed. 2013).................................14
*Manual for Complex Litigation*, Sec. 30.41 (3rd ed. 1995) ...................................12

## I.      INTRODUCTION

Plaintiffs move for preliminary approval of the Settlement[1] they have reached with Defendant Horizon Actuarial Services, LLC, ("Horizon Actuarial" or "Defendant").  The parties have reached a proposed settlement that, if approved by the Court, will resolve Plaintiffs' and Class Members' claims against Horizon arising from the cyber security incident at issue in this litigation. In support of this Memorandum, Plaintiffs submit herewith the Settlement Agreement ("SA") as Exhibit 1 and the Joint Declaration of Class Counsel as Exhibit 2.

This case arises from a cyber security incident (the "Data Security Incident") that Plaintiffs Justin Sherwood, Lindsey Quan, Tabatha Bedont f/k/a Tabatha Johnson, Greg Torrano, Jennifer Hill, Sia Moody, Anthony Ruiz, Alice Dodd, Frederick Lewis, Douglas Ackman, Ryan Evans, Amber Thomas, and Maria Chavez ("Plaintiffs") allege compromised the security of their personally identifiable information ("PII"). After extensive arm's-length negotiations, the Parties negotiated a Settlement that provides significant relief for Plaintiffs and the Class Members they seek to represent. The Court should grant preliminary approval of the proposed Settlement because it addresses the reasonable objectives of the litigation

---

[1] Unless defined, capitalized terms have the same meaning attributed to them in the Settlement Agreement, attached to Plaintiffs' Motion as Exhibit "1."

without the uncertainties Class Members would otherwise face in continued litigation and because the Settlement is fair and reasonable.

## II.     SUMMARY OF THE LITIGATION

After Horizon Actuarial announced the Data Security Incident, several class action lawsuits were filed by Plaintiffs throughout the country.  Class counsel coordinated with counsel for all Plaintiffs and sought consolidation of all of the lawsuits filed before this Court.  (ECF 6.) Simultaneously, counsel sought to be appointed Interim Co-Lead Class Counsel and Liaison Counsel.  (ECF 7.)  The Court consolidated the actions, appointed the undersigned as Interim Co-Lead Class Counsel, and set deadlines for filing a consolidated complaint and any responsive pleadings.  (ECF 16.)  To prepare the consolidated complaint, Interim Co-Lead Class Counsel extensively researched the law and facts surrounding the Data Security Incident. Among other things, Counsel reviewed Defendant's public announcements and communications to customers, privacy policies, reports, news articles, and retained experts in the area of privacy and cyber security to assist them in the litigation. Interim Co-Lead Class Counsel also reviewed other data breach litigation and analyzed the statutory and common law of all U.S. states and territories. To ensure the viability of class treatment, Plaintiffs' Counsel interviewed and investigated potential class representatives and vetted them to be named Plaintiffs.

After this extensive investigation, Plaintiffs filed their comprehensive 126-page Consolidated Class Action Complaint on July 13, 2022 ("Complaint") against Defendant. (ECF 21.) The Complaint alleged seventeen (17) claims, including: negligence, negligence per se, unjust enrichment, declaratory judgment and injunctive relief, invasion of privacy, violations of the Arkansas Deceptive Trade Practices Act, violation of the California Consumer Privacy Act, violation of California's Customer Records Act, violation of the unlawful and unfair prong of California's Unfair Competition Law, violation of Idaho's Consumer Protection Act, violations of the Illinois Consumer Fraud Act, violation of Louisiana's Database Security Breach Notification Law, violation of Louisiana's Unfair Trade Practices and Consumer Protection Law, violation of Nevada's Deceptive Trade Practices Act, violation of North Carolina's Unfair Trade Practices Act, violations of Oregon's Unfair Trade Practices Act, and violations of O.C.G.A. § 13-6-11.

The Complaint alleged that in November of 2021, Defendant experienced a data security incident in which unauthorized third parties gained access to its file server. Following discovery of this Data Security Incident, Defendant began investigating the scope and cause of the incident and determined that files containing Plaintiffs' and Settlement Class Members' names, Social Security numbers, benefit plan data, and dates of birth. Defendant began the process of notifying the victims

of this data security incident on January 13, 2022, though some Settlement Class Members were not notified until June 9, 2022.

Defendant moved to dismiss the Complaint on September 12, 2022, arguing lack of Article III standing and failure to state any plausible claim for relief against Defendant. (ECF 32.) After the Motion to Dismiss was fully briefed, the Parties began to conduct informal arm's-length negotiations and eventually filed a joint Motion to Stay Pending Mediation on February 22, 2023 (ECF 51), which this court granted (ECF 52) and subsequently extended (ECF 55).

Following extensive mediating and arm's-length negotiations from September 2022 through September 2023, the Parties reached a settlement. The Settlement Agreement and its exhibits (collectively "SA") were finalized and signed on September 20, 2023 and are attached to Plaintiffs' Motion as Exhibit "1."

## III.   SUMMARY OF SETTLEMENT

The Settlement negotiated on behalf of the class provides for the creation of a $7,750,000.00 non-reversionary Settlement Fund. SA ¶ 46. The Settlement Fund shall be used by the Settlement Administrator to pay for the following: (1) reimbursement for Out-of-Pocket Losses, Lost Time, and Cash Compensation; (2) Notice and Administrative Expenses; (3) Fee Award and Expenses as awarded by the Court; and (4) a *cy pres* payment to the benefit of all class members. SA ¶ 56.

**A. The Settlement Class**

The Class is defined as "the individuals identified on the Defendant Settlement Class List whose certain personal information may have been involved in the Data Security Incident." SA ¶ 43. The Class includes approximately 3,892,966 individuals.

**B.    The Settlement Benefits**

1.    <u>Settlement Payments</u>

Each Settlement Class Member shall be eligible to receive reimbursement of documented out-of-pocket losses incurred by him or her as a result of the Data Security Incident ("Out-of-Pocket Losses") subject to the Reimbursement Cap. SA ¶ 56.  Amounts that are eligible to be reimbursed as Out-of-Pocket Losses include, without limitation, losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after Defendant's notice of the Data Security Incident to the Class Members through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, provided  that the amount in question must represent an

amount that was actually paid out of pocket to a third party and has not otherwise been reimbursed to the Settlement Class Member. *Id.*

Pursuant to Section 56 of the SA, each Settlement Class Member shall also be eligible to obtain reimbursement for his or her time spent remedying issues related to the Data Security Incident, subject to the Reimbursement Cap ("Time Losses"), as described and to the extent provided below:

Settlement Class Members may self-certify the amount of time they actually spent remedying issues related to the Data Security Incident ("Attested Time") and, upon submission of a valid self-certification supporting the foregoing, shall be eligible for an amount of $25 per hour of Attested Time for up to five (5) hours of such Attested Time (for a total of up to $125).

No Settlement Class Member's aggregate reimbursement for Out-Of-Pocket Losses together with any reimbursement for Time Losses may exceed $5,000 (the "Reimbursement Cap"). SA ¶ 56.

### 2.   California Claims

Settlement Class Members may claim *via* the Claim Form an additional benefit of $50.00 pro rata per Settlement Class Member as compensation for their statutory claim(s) under California law ("California Claims"). To be eligible to receive compensation for California Claims, Settlement Class Members must attest,

under penalty of perjury, that they were residents of California at the time of the Data Security Incident. To redeem this pro rata $50.00 benefit, Settlement Class Members need not submit any documentation. SA ¶ 56.

### 3. Cash Payment

After the distribution of attorneys' fees, Class Counsel's Litigation Expenses, Administrative Fees, Compensation for Out-of-Pocket Losses and Lost Time, payments for California Claims, and reservation of the *Cy Pres* Reserve, the Settlement Administrator will make settlement payments of $50 per class member from any remaining funds to each Settlement Class Member who submits a claim and requests such payment, subject to a pro rata reduction. SA ¶ 56.

### 4. *Cy Pres* Reserve

The Settlement Administrator will also reserve $50,000 from the Settlement Fund to be distributed *cy pres* for the benefit of all Class Members (the *"Cy Pres* Reserve*)."* Id.

### 5. Release

The release in this case is tailored to the claims that have been pleaded or could have been pleaded in this case. Settlement Class Members who do not opt-out from the Settlement Agreement will release claims related to the Data Security Incident. SA ¶ 78.

### C.     The Notice and Claims Process

1.     <u>Notice</u>

Subject to the Court's approval, the Parties propose a Notice Program with three components: (1) U.S. Mail Notice, (2) Publication Notice, and (3) Notice on a Settlement Website (the "Long Notice"). Within 30 days of entry of the Preliminary Approval Order (SA Exhibit C), the U.S. Mail Notice (SA Exhibit D) shall be provided to Class Members via U.S. mail to the postal addresses within Defendant's possession. SA ¶ 65.

In addition to the individual direct notice, notice of the Settlement will be provided to Settlement Class Members through a digital media campaign and/or PR News Wire. SA ¶¶ 37, 65.

Further, the Settlement Administrator will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the Long Notice and Claim Form approved by the Court, as well as the Settlement Agreement. SA ¶ 69. The Long Notice, available at the Settlement Website, explains the terms of the Settlement Agreement, provides contact information for proposed Class Counsel, and explains the different options available.

2.      Payment of Administrative and Notice Costs

Defendant has agreed to pay for the cost of providing CAFA notice, separate and apart from the Settlement Fund. SA ¶ 10. The remainder of the notice costs and administration expenses will be paid out of the Settlement Fund. The Parties have agreed to use Epiq ("Settlement Administrator") as the Claims and Settlement Administrator. SA ¶ 42.

3. Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. Class Members will have ninety (90) days from the Notice Deadline to complete and submit a claim to the Claims Administrator. SA ¶ 12. The Claim Form, attached to the Settlement Agreement as Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it.

4.      Requests for Exclusion and Objections

Class Members will have up to and including sixty (60) days following entry of the Preliminary Approval Order to decide whether to object to or exclude themselves from the Settlement. SA ¶¶ 30-31. Similar to the timing of the claims process, the timing with regard to objections and exclusions is structured to give

Class Members sufficient time to review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days before the deadline for Class Members to object or exclude themselves from the Settlement. *See* SA, Settlement Timeline.

Any Class Member wishing to opt out of the Settlement Class shall individually submit a Request For Exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline, as described in the Long Notice. SA ¶ 67. A written opt-out notice must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement in the communication. *Id*. To be effective, a written opt-out notice must be postmarked no later than sixty (60) days from the Notice Deadline. Id. The Opt-Out Members shall not be eligible to receive any Settlement Benefits under, and shall not be bound by, the terms of the Settlement Agreement or the Judgment. Id. The Opt-Out Members shall also waive and forfeit any and all rights they may have to appear separately regarding and/or to object to the Settlement Agreement. *Id.*

Any Settlement Class Member who wishes to object shall submit a timely written notice of his or her objection no later than sixty (60) days from the Notice

10

Deadline (the "Objection Deadline"). SA ¶ 30. Such notice shall state: (1) the name of the proceedings; (2) the Settlement Class Member's full name, current mailing address, and telephone number; (3) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (4) the identity of any attorneys representing the objector; (5) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (6) a statement identifying all class action settlements objected to by the Settlement Class Member in the previous five (5) years; and (7) the signature of the Settlement Class Member or the Settlement Class Member's attorney. SA ¶ 68. To be timely, written notice of an objection in the appropriate form must be submitted to the Court and the Settlement Administrator and postmarked no later than the Objection Deadline. *Id.*

        5.    <u>Fees and Costs</u>

The Parties did not discuss the payment of attorneys' fees, costs, and expenses—other than that Defendant would pay reasonable attorneys' fees, costs, and expenses as may be agreed to by Defendant and proposed Class Counsel and/or as ordered by the Court—until after the substantive terms of the settlement had been agreed upon.

Defendant has agreed that Plaintiffs may request, subject to Court approval, up to $2,583,075.00, or 33.33% of the Settlement Fund to proposed Class Counsel for attorneys' fees and up to $50,000 in costs and expenses. SA ¶ 82. Proposed Class Counsel will submit a separate motion seeking attorneys' fees and costs 14-days before Class Members' deadline to exclude themselves from the Settlement Class or to object to the Settlement Agreement.

## IV.   LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. The approval of a class action settlement is a two-step process. First, the Court must conduct a preliminary review to determine whether the proposed class settlement warrants preliminary approval. *See Melanie K. v. Horton*, No. 1:14-cv-710-WSD, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2015); *see also See Manual for Complex Litigation*, Sec. 30.41 (3rd ed. 1995). Upon preliminary approval, the parties will provide Settlement Class Members with

notice, and the Court may more fully weigh the settlement's strengths and weaknesses at the final approval hearing.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *see also Meyer v. Citizens and Southern Nat'l Bank*, 677 F. Supp. 1196, 1200 (M.D. Ga. 1988) (There is a "strong judicial policy favoring settlement," and an "overriding public interest in favor of settlements."). Class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transp.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993). "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law." *In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). The Court has broad discretion in approving a settlement. *Id.* Indeed, Rule 23(e) "provides no standard for the district judge to apply in considering a proposed settlement." *In re Motorsports,* 112 F. Supp. 2d at 1333.

## V.   ARGUMENT

### A.   Certification of the Settlement Class is Warranted.

Before granting preliminary approval of a proposed settlement, the Court should first determine if the proposed Settlement Class is appropriate for certification. *See Manual for Complex Litigation.,* Sec. 21.632 (4th ed. 2013); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23. Additionally, where (as in this case), certification is sought under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claim. O.C.G.A § 9-11-23(b)(3); *Amchem*, 521 U.S. at 615-16.

"A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). When a court is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem*, 521 U.S. at 620. In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in

a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id; see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557 (N.D. Ga. July 20, 2007). Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny and an active role as a guardian of the interests of the absent class members. *Amchem*, 521 U.S. at 620. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Id.* Even under the heightened scrutiny, this case meets all the Rule 23 prerequisites, and for the reasons set forth below, certification is appropriate.

Class actions are regularly certified for settlement. In fact, similar cybersecurity incident cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part*, 999 F.3d 1247 (11th Cir. 2021), and in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), *vacated in part by Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), where a class was certified over objection to plaintiffs' damage

calculation; *see also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040 (S.D. Tex. 2012). Georgia state courts have also certified similar cyber security class actions for settlement. *See e.g., Cece v. St. Mary's Health Care System, Inc. et al.,* No. SU20CV0500 (Ga. Super. Ct. Athens/Clarke County) (final approval granted of data breach class action settlement on April 4, 2022)*; Jackson-Battle v. Navicent Health, Inc.*, No. 2020cv072287 (Ga. Super. Ct. Bibb County) (final approval of data breach class settlement granted August 4, 2021). This case should be similarly certified, and the settlement similarly approved.

    1.  The Proposed Settlement Class Meets the Requirements of Rule 23(a).

        *a. The class is so numerous that joinder of all members is impracticable*.

Numerosity requires the members of the class be so numerous that separate joinder of all members is impracticable. O.C.G.A. § 9-11-23(a)(1). To demonstrate numerosity, "plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *Columbus Drywall*, 258 F.R.D. at 557 (*quoting Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997)).

Here, the Parties have identified approximately 3,892,966 individuals in the proposed Class. Joinder of so many parties would certainly be impracticable. Thus, the numerosity requirement is easily satisfied.

### b. *Questions of law and fact common to the class.*

The second prerequisite to certification is that there exist questions of law or fact common to the class. Rule 23(a)(2). To demonstrate commonality, plaintiffs must demonstrate class members have suffered the same injury such that their claims can be productively litigated at once. *In re Equifax Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 256132 *11 (Mar. 17, 2020) (*citing Sellers v. Rushmore Loan Mgmt. Servs., LLC,* 949 F.3d 1031, 1039 (11th Cir. 2019)). Courts have previously addressed this requirement in the context of cybersecurity incident class actions and found it readily satisfied. *In re Equifax*, 2020 WL 256132 at *11 (*citing In re the Home Depot, Inc., Cust. Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement)); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. Aug. 15, 2018) (noting that the complaint contains a common contention capable of class-wide resolution—one type of injury claimed to have been  inflicted by one actor in violation of one legal norm).

Here also, the commonality requirement is readily satisfied, as Plaintiffs and Settlement Class Members all have common questions of law and fact that arise out of the same event—the Data Security Incident. Specifically, Plaintiffs have alleged that the following questions of law and fact are common to the class:

- Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs and Class Members' PII;
- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Security Incident;
- Whether Defendant's data security systems before and during the Data Security Incident complied with applicable data security laws and regulations;
- Whether Defendant's data security systems before and during the Data Security Incident were consistent with industry standards;
- Whether Defendant owed a duty to Class Members to safeguard their Personal Information;
- Whether Defendant breached its duty to Class Members to safeguard their Personal Information;
- Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;
- Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;
- Whether Defendant's conduct was negligent;
- Whether Defendant's conduct was *per se* negligent;
- Whether Defendant failed to provide notice of the Data Security Incident in a timely manner; and
- Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

As in other cybersecurity incident cases, these common issues all center on Defendant's conduct, or other facts and law applicable to all Class Members, thus

satisfying the commonality requirement. *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig*., No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig*., 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching class wide resolution.").

   *c. The claims and defenses of Plaintiffs are typical of the claims and defenses of the class.*

  The next prerequisite to certification, typicality, measures whether the claim or defense of the representative party is typical of the claim or defense of each member of the class. Rule 23(a)(3). "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large. *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) *(internal quotation omitted)*. Like the commonality requirement, typicality does not require all putative class members share identical claims; factual difference amongst the claims will not necessarily defeat certification. *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004). The named representatives need only share the same "essential characteristics" of the larger class. *Id.* The typicality requirement is regularly met in data breach class actions. *In re Equifax*, 2020 WL 256132 at *12.

Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement. Specifically, Plaintiffs' claims are typical of those of the other Settlement Class Members because they arise from the same Data Security Incident. They are also based on the same legal theory, i.e., that Defendant had a legal duty to protect Plaintiffs' and Settlement Class Members' personal information. Because there is a "strong similarity of legal theories" between Representative Plaintiffs' claims and the claims of the Settlement Class Members, the typicality requirement is satisfied.

### d. Plaintiffs will fairly and adequately protect the interests of the Class.

Rule 23(a)(4) requires that Plaintiffs will fairly and adequately protect the interest of the Class. This requirement involves a two-part test that asks: (1) whether plaintiffs have interests antagonistic to the interests of the other class members; and (2) whether the proposed class counsel has the necessary qualifications and experience to lead the litigation. *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 690-691 (N.D. Ga. Mar. 17, 2013).

As for the first prong, the Plaintiffs are members of the Class and do not possess any interests antagonistic to the Class. They allege that their personal information was compromised as a result of the same Data Security Incident in which the personal information of the Class was also allegedly compromised.

Indeed, Plaintiffs' claims coincide identically with the claims of the Class, and Plaintiffs and the Class desire the same outcome of this litigation. Plaintiffs have vigorously prosecuted these cases for the benefit of all Class Members. Plaintiffs have participated in the litigation, reviewed pleadings, and participated in the factual investigation of the case.

The second prong is also met. Proposed Interim Class Counsel has extensive experience in class actions generally, and, in particular, data breach class actions. *See* Joint Dec., Ex. 2 ¶¶ 25-27. Because Plaintiffs and their counsel possess substantial experience and track records in similar litigation and have vigorously prosecuted the case at hand to get the best result for Plaintiffs and Class Members, the adequacy requirement is satisfied.

    2.  <u>The Proposed Class Meets the Requirements of Rule 23(b)(3)</u>.

In addition to the requirements discussed at length above, Plaintiffs must demonstrate that one of the requirements of Rule 23(b) are met. Here, questions of law or fact common to class members predominate over any individual issues, making class treatment superior to other available methods of adjudication. *See* Rule 23(b)(3).

        *a.  Common issues predominate over individualized ones in this matter.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to ... relief." *In re Equifax*, 2020 WL 256132 at *13 (*quoting Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)).

Common issues readily predominate here because the central liability question in this case—whether Defendant failed to safeguard Plaintiffs' information, like that of every other Class Member—can be established through generalized evidence. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Several case-dispositive questions can be resolved identically for all members of the Class, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and Class Members and whether Defendant breached that duty. The many common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues.

Other courts have recognized that these types of common issues arising from a cybersecurity incident predominate over individualized issues. *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, 2009 WL 5184352, at *6 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' personal information); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct").

*b.  Class treatment is superior to individual litigation.*

Finally, a class action is superior to other methods available to resolve the claims of the proposed Class fairly, adequately, and efficiently. A superiority analysis involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). The focus is efficiency. *In re Equifax.*, 2020 WL 256132 at *14.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. Indeed, absent class treatment, each Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

Additionally, the proposed Settlement will give the Parties the benefit of finality, and because this case has now been settled pending Court approval, the Court need not be concerned with issues of manageability relating to trial. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating hundreds of thousands of individual data breach cases arising out of the *same* Data Security Incident.

As the superiority requirement is satisfied, along with all other requirements of Rule 23, the Court should certify the Class.

## B.   Plaintiffs' Counsel should be appointed Class Counsel.

In appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court appointed Interim Co-Lead and Liaison Counsel based on their qualifications and experience. (ECF 16.)  Since then, Interim Co-Lead and Liaison Counsel have worked cooperatively and efficiently and committed substantial time and resources to this case. This work has included (1) investigating the data breach, (2) researching and evaluating the appropriate legal claims to assert, (3) interviewing potential class representatives about their experiences, (4) working with other counsel to achieve consolidation, (5) preparing and filing a consolidated class action complaint, (6) opposing the motion to dismiss, (7) negotiating discovery issues, (8) engaging in informal discovery with Defendant in advance of the mediation; (9) participating in a mediation session and subsequent settlement discussions, and (10) negotiating the proposed settlement, preparing the settlement documentation, and moving for preliminary approval. *See* Exhibit 2, Joint Dec., ¶¶ 1-6, 31.  Because

Interim Co-Lead and Liaison Counsel have demonstrated their commitment to litigating these claims, the Court should appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Kenya J. Reddy of Morgan & Morgan as Co-Lead Class Counsel and MaryBeth V. Gibson of The Finley Firm, PC, as Liaison Counsel.

### C. The *Bennett* Factors Support Preliminary Approval: The Proposed Settlement is Fair, Reasonable, Adequate, and Free of Collusion.

After determining that certification of the Class is appropriate, the Court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. Some courts in the Eleventh Circuit find preliminary approval appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). Other courts take a preliminary look at the factors considered fully at the second—or final approval—stage, known as the *Bennett* factors. The *Bennett* factors include:

> "(1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved."

*Columbus Drywall*, 258 F.R.D. at 557 (*quoting Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir 1984)). In either case, courts consider the relevant factors "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986; *see also Meyer v. Citizens and Southern Bank*, 677 F. Supp. 1196, 1200 (M.D. Ga. 1988).

The proposed Settlement warrants preliminary approval under each approach.

### 1. The proposed Settlement is the result of good faith negotiations, is not obviously deficient, and falls within the range of reason.

Here, the Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in these cases. Exhibit 2, Joint Dec., ¶¶ 7-16; 25-27. Moreover, as discussed at greater length below, the Settlement provides real value to valid claimants who have been harmed—where continued litigation would provide significant risks.

### 2. The *Bennett* factors support preliminary approval.

Here, when preliminarily considering the *Bennett* factors examined in depth at final approval, there is no question that the proposed Settlement is well "within the range of possible approval," fair, reasonable, and adequate, and should be approved. While the Court cannot yet consider class approval before notice has been

provided, an initial examination of the merits of the case, risks of litigation, and the benefits obtained by the Settlement Agreement support preliminary approval.

       *a. The benefits of settlement outweigh the risks at trial.*

Settlement Class Members who submit valid claims are eligible to receive up to $5,000 in out-of-pocket expense reimbursements and payments for lost time, an additional benefit of a $50 pro rata payment to Settlement Class members who were residents of California at the time of the Data Security Incident, and a $50 cash payment, subject to pro rata reduction, to each Settlement Class Member who submits a claim after the distribution of attorneys' fees, Class Counsel's Litigation Expenses, Administrative Fees, Compensation for Out-of-Pocket Losses and Lost Tine, and payments for California Claims. In addition, $50,000 of the Settlement Fund is reserved for *cy pres* to the benefit of all Class Members. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain.

While Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially case-dispositive defenses should litigation continue, and in fact has already filed a motion to dismiss, on which a ruling has been postponed pending the stay in this Litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, cybersecurity cases

like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 CV 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). As one federal district court recently observed in finally approving a settlement with similar class relief:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

*Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, cybersecurity incident cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury.

While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Defendant, as well

as the risks inherent to continued litigation. Defendant has consistently denied the allegations raised by Plaintiffs and made clear at the outset that they would vigorously defend the case.  The proposed Settlement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

> b. *The Settlement is within the range of possible recoveries and is fair, adequate, and reasonable.*

The second and third *Bennett* factors are often considered together. *See Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, at \*6 (S.D. Fla. Oct. 7, 2013). In evaluating the range of possible recoveries and the fairness, reasonableness, and adequacy of the settlement, "[t]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. at 1323. Here, Settlement Class Members will receive benefits from a $7,750,000 Settlement Fund. Each individual Settlement Class Member is eligible to receive up to $5,000 in expense and time reimbursements—including up to $125 in lost time simply by attesting that the time was spent mitigating the effects of the Security Incident, as well as an additional $50 payment to Settlement Class Members who resided in California at the time of the Data Security Incident, and an additional $50 payment to all claiming settlement class members if funds remain. In addition, $50,000 is reserved for *cy pres* to benefit all Class Members. These payments provide real value. *See Columbus Drywall*, 258

F.R.D. at 559 (court found settlement fair, reasonable, and adequate, and preliminary approval warranted where the there was an immediate and substantial benefit to the class). Accordingly, the Settlement is eminently reasonable, especially considering that it avoids the potential contingencies of continued litigation.

*c. Continued litigation would be lengthy and expensive.*

As discussed above, cybersecurity incident litigation is difficult, complex, and the rapid evolution of case law makes outcomes uncertain. While early settlement has allowed costs to stay modest, protracted litigation would only serve to increase costs and have a potentially negative affect on class recovery, which is itself far from certain. Continued litigation would also increase the burden on the court, without any guaranteed benefit to Plaintiffs or Class Members. "Complex litigation ... 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670 *21 (S.D. Ala. May 23, 1996) (*quoting In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). A settlement, like the one here, "will alleviate the need for judicial exploration of . . . complex subjects [and] reduce litigation costs," thus meriting preliminary approval. *See Lipuma*, 406 F. Supp. 2d at 1324.

*d. There has not been any opposition to the Settlement.*

Plaintiffs have no reason to believe there will be opposition to the Settlement. This factor, however, is better considered after notice has been provided to Class Members and they are given the opportunity to object. *See Columbus Drywall*, 258 F.R.D. at 561. Thus, at this point, this factor is neutral in the analysis.

> e. *Plaintiffs had sufficient information to evaluate the merits and negotiate a fair, adequate, and reasonable settlement.*

The final *Bennett* factor allows a Court to consider whether "plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation. *Lipuma*, 406 F. Supp. 2d at 1324. Vast formal discovery is not a requirement. *Id.* (*quoting Cotton v. Hinton*, 559 F.2d 1326,1332 (5th Cir. 1977)).

Before filing the Complaint, Plaintiffs' Counsel devoted significant time to investigating the facts related to the data breach and Defendant's subsequent response. Counsel also extensively researched potential claims under the laws of the various U.S. states. This case has been thoroughly investigated by counsel experienced in cybersecurity incident litigation. Exhibit 2, Joint Dec., ¶¶ 5-11; 25-27; 31. After filing the Complaint, Counsel opposed the motion to dismiss and engaged in protracted negotiations with Defendant's Counsel over the scope of discovery and settlement terms. This work, combined with their experience in successfully prosecuting similar data breach cases, gave Plaintiffs' Counsel the

necessary leverage to negotiate the best relief possible for the Class. Moreover, Counsel's experience and investigation, combined with the informal exchange of information that occurred during negotiations, put Plaintiffs in a position to proficiently evaluate the case and negotiate a settlement they view as fair, reasonable, and adequate, and worthy of preliminary approval. *Id*. Like the other *Bennett* factors, this factor weighs in favor of preliminary approval.

**D.      The Proposed Notice Plan Should be Approved.**

Rule 23(e) provides "notice of the proposed . . . compromise shall be given to all members of the class in such a manner as the court directs." Due process requires provision of the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also In re Domestic Air,* 141 F.R.D. 535, 539 (N.D. Ga. 1992) ( "[W]hat amounts to reasonable efforts under the circumstances is for the Court to determine after evaluation of the available information and the possible methods of identification."). The Notice Program provided for by the Settlement Agreement satisfies the

requirements of Rule 23 and due process and is designed to be the best practicable and to meet all the criteria set forth by the *Manual for Complex Litigation*.

Here, notice shall be provided to Class Members via direct mail to the postal address in Defendant's records, as well as via publication notice. SA ¶ 65. In addition, Defendant has also agreed to have the Settlement Administrator establish and maintain a settlement website through which Settlement Class Members can receive additional information about the Settlement. SA ¶ 69.

The notices are clear and straightforward. They define the Class; clearly describe the options available to Class Members and the deadlines for taking action; describe the essential terms of the settlement; disclose the amount that proposed Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. Exhibit 1, SA Ex. B and Ex. D.

The Notice here is designed to be the best practicable under the circumstances, apprises Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. *See Agnone v. Camden County, Georgia*, No. 2:14-cv-24-LGW-BKE, 2019 WL 1368634, *9 (S.D.

Ga. Mar. 26, 2019) (finding class notice mailed directly to settlement class members was the best practicable and satisfied concerns of due process); *Barkwell v. Sprint Communications Company L.P.*, No. 4:09-CV-56 (CDL), 2014 WL 12704984, *6 (M.D. Ga. Apr. 18, 2014) (finding a notice program that involved direct mail notice to satisfy due process). Accordingly, this Court should approve the Notice process.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of direct reimbursements for expenses incurred and time spent relevant to the Data Security Incident. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: September 20, 2023                Respectfully submitted,

THE FINLEY FIRM, P.C.

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
N. Nickolas Jackson
Georgia Bar No. 841433
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
Telephone: (404) 320-9979
Fax: (404) 320-9978

Kenya J. Reddy
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Phone: (813) 202-7185
Fax: (813) 222-4738

Gary M. Klinger (pro hac vice)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
Email: gklinger@milberg.com

Terence R. Coates (pro hac vice)
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
Email: tcoates@msdlegal.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on September 20, 2023, I filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE AND SCHEDULING OF A FINAL APPROVAL HEARING** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson

**CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing has been prepared in Times New Roman 14 point, one of the fonts and points approved by the Court in LR 5.1(C), with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

*/s/ MaryBeth V. Gibson*